Sigerson vs. Pomeroy & Andrews.

NAPTON, J., dissenting.

---

JOHN SIGERSON vs. POMEROY & ANDREWS.

1. A factor must strictly follow the orders and instructions of his principal, and a departure from them will be at his own risk. If he does with proper care and diligence, faithfully and *bona fide*, carry out the orders of his principal, and yet a loss accrues, it must fall upon the principal.

2. Whether a factor obeys or disobeys the instructions of his principal is a question of fact for the finding of the jury.

3. An instruction which is calculated to mislead the jury by withdrawing from their inquiry material facts, is improper, and it is good cause for reversing the judgment.

## APPEAL from the St. Louis Circuit Court.

### STATEMENT OF THE CASE.

This was an action of assumpsit by the appellees against the appellant. Common counts for money had and received, and for money paid, laid out and expended. Plea the general issue provided by Statute of 1847.

At the trial the case appeared to be, that the plaintiffs were commission and forwarding merchants in the city of St. Louis, and had advertised that they would ship goods to New Orleans, Liverpool, and other places; that the defendant in 1848, at different times from the first to the 18th of April, delivered to the plaintiffs, lard, pork and bacon, worth over $8000, to be shipped and sold, a portion thereof, in New Orleans, and 386 barrels of lard in Liverpool, upon the whole the plaintiffs advanced to the defendants over $7000, $4000 of which was advanced upon the

lard destined for Liverpool, and 24 barrels of other lard. That destined for Liverpool, was worth in St. Louis $4995 63. (The plaintiffs also received of the defendant in money and other goods about $1300.)

The plaintiffs shipped the goods to the commercial house of Andrews & Brother in New Orleans, which house was then in good credit. About the time of the shipments, both the members of the house of Andrews & Brother committed suicide, and that the administration of their estates was not yet closed, but the estates were generally regarded as insolvent.

The lard directed to be shipped to Liverpool was so directed in writing in these words: "Messrs. Pomeroy & Andrews, Gents. I herewith hand you dray tickets and invoice for 410 barrels of lard, 386 of which is a prime article and in fine order, and which I wish sent forward direct from New Orleans to Liverpool, provided your correspondents are in a situation to do that kind of business and have correspondents that they are satisfied will protect their and our interest." This direction was in the form of a letter, and signed by the defendant.

The plaintiffs on the same day wrote to Andrews & Brother enclosing a copy of the defendants instructions and a bill of lading of the lard, and stating that if they could negotiate they would have to advance about $4000 on that shipment, and also stating that if it could be shipped to Liverpool and drawn upon by Andrews & Brother, so as to make their (the plaintiffs) advance good with all charges for receiving and forwarding, they had better send it through as the defendant was very anxious to have it sent to Liverpool. Andrews & Brother wrote to the plaintiffs in reply that they offered the lard to all those to whose houses in Liverpool they would ship, and they would not any of them advance over three cents per pound (which rate by other testimony would have amounted to about $2550 96.) Andrews & Brother then sold the lard in New Orleans. The defendant gave evidence tending to prove that if the lard had been shipped to Liverpool he would have made a large profit thereon.

There was no evidence of what was done with the other goods shipped to Andrews & Bro.

It was proved that there was an arrangement between the plaintiffs and Andrews & Brother, that on all consignments made by the plaintiffs to Andrews & Brother, the plaintiffs should receive a portion of the commissions made by Andrews & Brother on such consignments—(one witness, the plaintiff's book-keeper, stating the plaintiff's portion to be one per cent., the whole commission of Andrews & Brother being two and a half per cent., and another witness stating his belief that the portion of the plaintiffs was one-half of the whole commission received by Andrews & Brother,) and this was the plaintiff's only compensation for their services, they making no other charge in St. Louis for shipping, advancing, &c. It was a part of the arrangement that the plaintiffs might draw upon Andrews & Brother for advancements made upon consignments to them. It was proved to be usual to charge a commission for shipping and advancing distinct from that charged for receiving and selling at the port of destination.

It was proved that the plaintiffs raised all the money which they advanced to the defendant by negotiating bills which they drew on Andrews & Brother against the shipments of defendant's goods. And it was not proved that the plaintiffs had paid any of those bills or were liable to pay them further than that a banker held some bills drawn by the plaintiffs on Andrews & Brother, and looked to the plaintiffs for payment of them, but these bills were not described by numbers, dates, amounts, or in any other way. It was not proved that Andrews & Brother had not paid any of the bills drawn against Sigerson's goods. Nor was it proved that by reason of the alleged insolvency of Andrews & Brother, the goods or their proceeds had been lost to the plaintiffs.

It was also proved that the plaintiffs, acting for Andrews & Brother had agreed with the defendant to buy of him a quantity of pork for Andrews & Brother, and had paid him, on account thereof, $3,500, and received of him 275 barrels of pork, valued at $1848 69, and claimed of the defendant a balance on that account of $1651 31, and this balance was included in the verdict rendered for the plaintiffs, as appears by the amount thereof.

There was some inconclusive evidence given of the custom of commission merchants as to their liability for the solvency of their consignees.

The court then, upon motion of the plaintiffs, instructed the jury as follows :

1st. That by the general law of the land, commission and forwarding merchants, like other agents, are required to follow the directions of their principals, to act with good faith, and with ordinary care, skill and dilgence in regard to the business committed to them by their principals, and if, notwithstanding a compliance with these duties losses occur in such business, such losses must be borne by the principal, and the commission or forwarding merchant is not responsible.

2d. If the jury find in the present case that the plaintiffs, in carrying out the orders of the defendant, sent forward the defendant's produce to the house of Andrews & Brother, in the usual course of business; that the last mentioned house was then in good credit, and the plaintiffs had no reason to doubt its solvency, and afterwards the proceeds of such produce were lost through a violation of defendant's orders on the part of Andrews & Brother, or by reason of their insolvency; then the plaintiff's are not responsible to the defendant for such loss and are entitled to recover of him in the present action the amount of their advances on such produce.

3d. The jury is further instructed that there is no evidence before them tending to show any local usage or custom at St. Louis in regard to the duties or responsibilities of commission and forwarding merchants different from the general law, the jury will therefore entirely disregard the evidence of witnesses as to their opinion of such duties and responsibilities, and decide this cause according to the general law as explained by the court.

4th. The jury are further instructed, that the circumstance of the plaintiff's having made an arrangement with the house of Andrews & Brother, by which the plaintiff's were to receive one per cent. on the amount of sales of such produce as might be consigned by the plaintiffs to Andrews & Brother, does not make the plaintiff a partner in the house of Andrews & Brother." To which the defendant excepted.

The court, upon motion of the defendant, instructed the jury as follows:

1st. If the jury believe from the testimony that Pomeroy & Andrews failed to comply with the instructions of Sigerson as to the disposition of the goods delivered to them for shipment and sale, or part of said goods; and if a loss happened in consequence of such failure, then Pomeroy & Andrews are liable to Sigerson for such loss, and cannot recover the amount of their advances on such goods until they have paid to Sigerson the amount of such losses.

2d. The jury is instructed that if Pomeroy & Andrews made advances to John Sigerson upon property put into their hands for shipment and sale, although both the property and Sigerson are liable to them to repay their advances, still Sigerson is only liable after the fund which was raised, or might have been raised by proper diligence of Pomeroy & Andrews out of the property shall have been exhausted; and if Pomeroy & Andrews have failed to use due diligence in the shipment and sale of said property they cannot recover advances made upon it from John Sigerson.

The defendant also moved the court to give to the jury the following instructions, which the court refused to give, to which refusal the defendant excepted.

1st. The jury is instructed that if Pomeroy & Andrews and Andrews & Brother were jointly concerned in the shipment and sale of property put into the hands of Pomeroy & Andrews, by John Sigerson, or were jointly interested in the profits of such shipment and sale, then the insolvency of Andrews & Brother, after they had received the property, does not give to Pomeroy & Andrews a right to recover of John Sigerson the advances which they made to said Sigerson upon said property, but if a loss occurred in consequence of such insolvency, then John Sigerson may recover of Pomeroy & Andrews the sum which would have been the net proceeds of said property if Sigerson's instructions in reference to it had bee obeyed.

2d. If Pomeroy & Andrews made advances to John Sigerson on account of property delivered to be forwarded for a market, and the money advanced was raised upon bills drawn by P. & A. against said property, they have no right to recover against Sigerson for said advances, without showing to the jury that they have paid, or are liable to pay, those bills.

3d. If Pomeroy & Andrews made advances of money to John Sigerson on account of the

property mentioned in the testimony, and they raised the money for the advances by drawing bills on their consignees in New Orleans, and negotiating the same, they have no right to recover from Sigerson the amount of the advances without showing that the said bills or some of them have been dishonored, and that Pomeroy & Andrews have paid, or are liable to pay, the amount of same.

4th. Unless the jury believe from the testimony that Pomeroy & Andrews have actually lost money, and are out of pocket by their advances made to Sigerson the jury ought to find for the defendant.

The jury rendered a verdict for the plaintiffs for $6883 84.

The defendant moved for a new trial.

Upon the hearing of the motion for a new trial, the plaintiffs remitted $117 of the verdict, and the motion for a new trial was overruled, to which the defendant excepted.

———, for appellant.

I. Pomeroy & Andrews did not entitle themselves to recover of Sigerson their advances to him, by showing the insolvency of their consignees, (and this without reference to the particular arrangement between them and Andrews & Brother.) 6 Cow. 181, 18 Johns. R. 24; 3 Johns. Ch. R. 569; 5 Serg. & Rawle, 27; 2 East., 523.

By drawing against the consignments and getting the bills discounted for their own use they appropriated so much of the proceeds, and became responsible for them. 5 Leigh, 456.

II. Pomeroy & Andrews did not entitle themselves to recover of Sigerson their advances upon the lard destined for Liverpool by showing the insolvency of their consignees in New Orleans (without reference to the arrangement between them and Andrews & Brother.)

III. Pomeroy & Andrews should not have recovered their advances on the lard destined for Liverpool, when their consignees in New Orleans sold it there, contrary to the instructions given by Sigerson to Pomeroy & Andrews.

IV. Pomeroy & Andrews having been repaid their advances (or having raised the money to make them) by negotiating bills drawn by them against the shipments, cannot recover the advances made, without showing that they have paid those bills, or are liable to pay them.

V. Pomeroy & Andrews were partners of Andrews & Brother, as to Sigerson, in the shipment and sale of his goods and consequently they cannot recover of Sigerson, their advances by showing the insolvency of Andrews & Brother. Waugh vs. Carver, 2d H. Bla., 230, leading case; Cheap vs Cramonds, 4 B. and A., 663; (6 Eng. Com. Law R., 556;) Ex-parte Chuck & Bingham, 469; (21 Eng. Com. Law Rep., 346;) Ex-parte Didby, &c.; 1 Deacon, 341; (38 Eng. Com. Law Rep. 495;) 4 B. and C., 867; (10 Eng. Com. Law Rep., 460;) Welden vs. Shubourne, 15 Johns. Rep., 409; Rob vs. Halsey, 16 Johns. R., 34; Musier vs. Trumbour, 5 Wend., 274; Sims vs. Welling, 8 Serg. and Rawle, 103; Champion vs. Bostwick, 18 Wendall, 175; Everet vs. Chapman, 6 Conn. Rep., 347; Brown vs. Robbins 3 N. H. 64; 3 Har. and J., 505; 9 Metcalf, 380; 16 Pick., 412.

VI. If Pomeroy & Andrews and Andrews & Brother were not partners, under the arrangement between them, their case is taken out of the general rule, that, all who share the profits of a business or adventure are partners in it, upon the ground that one house was the agent of the other; and if Pomeroy & Andrews were the agents of Andrews & Brother, then they were not entitled to recover at all, especially for the default of their principals, or if Andrews & Brother were the agents of Pomeroy & Andrews, then they could not recover for the insolvency of their own agents.

VII. A new trial should have been granted because the verdict was clearly against the evidence. As to the power of the supreme court to order a new trial where the circuit court refuses to grant one, on the sole ground of the verdict being against evidence, see Hart vs. Leavenworth, 11 Mo. Rep., 629. The verdict was against the evidence in the following particulars.

1st. There was no testimony given tending to prove that the insolvency of Andrews & Brothers (if that was proved) occasioned any loss to Pomeroy & Andrews of Sigerson's goods or their proceeds.

2nd. There was no evidence that the bills drawn by Pomeroy & Andrews on Andrews & Brother against Sigerson's property were not fully paid by Andrews & Brother.

3rd. There was sufficient evidence that Pomeroy & Andrews, themselves disobeyed Sigerson's instructions in reference to the lard ordered to be shipped to Liverpool, for (even if they did not waive the condition or proviso in Sigerson's order by receiving and shipping the lard) they added another condition or proviso in their direction to their consignees in New Orleans, namely that if the consignees could ship it, so as to make their (P. & A.'s) advances good with all charges for receiving and forwarding, they had better send it through as Sigerson was very anxious to have it sent to Liverpool; and the importance of this condition was shown by the fact that the consignees of the lard, not being able to get an advance sufficient to cover P. & A.'s advance and charges, sold it in New Orleans. 3 Wash, C. C., 151; 2 Blackf., 130; 6 Cow., 128; 7 Cow., 456; 11 Mo. R., 88, Switzer vs. Connett.

6th. The verdict included in its amount the balance due from Sigerson to Andrews & Brother on account of the contract for the sale of pork by Sigerson to Andrews & Brother, in which balance Pomeroy & Andrews had no interest.

## R. M. FIELD, for appellees.

1. There was no error in the instructions given by the court. 1st. The first instruction correctly explains the duties and responsibilities of commission and forwarding merchants. Story's agency, § 33, 183, 186.

2nd. The second instruction is a corollary from the first. Story's agency, § 342; Burrill vs. Phillips, 1 Gall. Rep., 360.

3rd. The third instruction was proper, for it is manifest that the witnesses for the defendant below, under color of proving a usage of St. Louis, gave only their opinions of the general laws, or what is the same thing, a usage throughout the whole commercial world.

4th. The fourth instruction was correctly given. By a series of decisions commencing with Dixon vs. Cooper, (3 Wels. 40) it is firmly settled that a compensation to an agent out of the profits of a business does not make the agent a partner. See cases collected in 1 Smith's leading cases 491 et. seq.

In the present case there was no agreement to share profits, but only to pay the plaintiff a commission on the gross amount of sales.

The more recent cases have established as a test of partnership the right to call for an account and to a specific lien on the proceeds of the business to the exclusion of general creditors.

3 Kents Com. 25 (4th Edition;) Champion vs. Bostwick, 18 Wend., 175; Denny vs. Cabot, 6 Metcalf, 82; Buckler vs. Eckhart, 1 Den., 337; Bradley vs. White, 10 Metcalf, 303; Miller vs. Bartlett, 15 S. and R., 137; Heckhert vs. Fegerly, 6 Wats. and S., 143; Loomis vs. Manhall. 12 Conn., 69; Hodges vs. Dawes, 6 Alab. Rep., 733.

II. The defendants' instructions were properly refused.

1st. The first was the opposite of the fourth given, and was consequently improper if the last was correct.

2, 3 and 4th. The three last were manifestly improper as seeking to draw into the case the relation of the plaintiffs to their creditors, with which the defendant and the jury had no concern. So far as the plaintiffs had received any thing on the bills out of the proceeds of the defendants produce, the defendant would have had the benefit of it under the 6th instruction given by the court on defendant's motion. Beyond this the existence of the bills was of no importance in the case. The plaintiffs had a right to recover their advances immediately in the absence of any proof of an extension of credit. Beckwith vs. Sibley, 11 Peck., 482.

RYLAND, Judge, delivered the opinion of the court.

From the above statement, the points necessary for our adjudication arise from the instructions given, as well as those refused by the court below.

The general principles involved in this case will not be disputed. The factor must strictly follow the orders and instructions of his principal, and a departure from them will be at his own risk.

If the factor shall with proper care and diligence, faithfully and *bona fide* carry out the orders of his principal, and notwithstanding he does this, a loss shall still accrue, this loss must fall on the principal. The factor's making advances upon the shipments made, does not withdraw him from the necessity to obey the directions accompanying the commodity which he received for shipment.

In the case now before us, the plaintiffs below contend that they obeyed the instructions of the defendant Sigerson, in regard to the shipping of the lard; by sending the letter of Sigerson which had been addressed to them, to Andrews & Brother, commission merchants of fair standing at the time in New Orleans, to whom they had consigned the lard.

While on the other hand, Sigerson contends, that Pomeroy & Andrews did not obey his directions, that although they forwarded his letter to their consignees, yet it was accompanied with other directions, orders, conditions and requirement, which caused a violation of the directions given by him to Pomeroy & Andrews.

Whether Pomeroy & Andrews did obey these directions, by giving the same to their consignees in New Orleans; or whether they departed from them or altered them, by adding conditions and requirements inconsistent therewith, was a fact to be left to the finding of the jury, and the first instruction which the court gave on the part of the defendant, embraced this subject. We do not feel ourselves at liberty to disturb this finding, however we might differ from the jury in reaching the conclusion they did in this case.

We find no fault with the first instruction given by the court for the plaintiffs below; and shall therefore pass it by.

We do not assent to the second instruction for the plaintiffs in this case.

It has a tendency to withdraw from the jury the enquiry as to the connection between Pomeroy & Andrews and Andrews & Brother, whether there was a partnership or not in the profits and losses arising from the shipping and forwarding produce generally. It also took from them the

66

enquiry, whether the plaintiffs in this action were the agents or not as they stood between Andrews & Brother and Sigerson, in this business; and whether the lard was lost by a violation of Sigerson's orders, caused by the plaintiffs or not. We think this instruction as it stands, might mislead the jury, and was therefore improper.

The refusal of the court to give the 3d instruction asked for by the defendant, as marked in the above statement, is in our opinion erroneous. This instruction contains a correct legal proposition, and was applicable to the facts in proof and ought to have been given to the jury.

If Pomeroy & Andrews only advanced money got from the sale of bills, drawn by them on Andrews & Brother on the shipment of Sigerson's property to Andrews & Brother, and Andrews & Brother received the shipments and thus were in receipt or possession of the fund drawn on, then Pomeroy & Andrews could have no claim on Sigerson without shewing, that the bills or some of them have been dishonored, and that they paid or become liable to pay the same.

In our opinion then without taking notice any further of the instructions, the judgment of the court below is erroneous. The motion for a new trial should have been sustained.

The judgment is therefore reversed and cause remanded. Judge Birch concurring herein.