Peter Nicholson et al., Plaintiffs and Appellants, v. William Golden et al., Defendants, and E. A. Phillips et al., Interpleaders, Respondents.

Kansas City Court of Appeals, June 6, 1887.

1. Practice—Pleading—Waiver of Objections—Case Adjudged. Section 3519, Revised Statutes, declares: "When any of the matters enumerated in section 3515 (which enumerates the causes for demurrer), do not appear upon the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject matter of the action, and excepting the objection that the petition does not state facts sufficient to constitute a cause of action." As, in this case, the fact of the pendency of an action to set aside the mortgage in question did not appear upon the face of the petition, the interplea, the objection should have been raised by answer, and, as this was not done, it must be held to have been waived by the plaintiffs.

2. MORTGAGE—POSSESSION OF GOODS—WHEN NOT VOID ON ITS FACE. Where the mortgage, as here, is not void on its face, and was duly acknowledged and recorded, the fact that it might be construed possibly as contemplating that the mortgageors should remain in possession of the goods, would not vitiate it. Notwithstanding they may have sold goods, and that such was the understanding between them and the mortgagees, that would not vitiate the mortgage, if the proceeds arising from such sale were to be applied to the use of the mortgagees, under the mortgage.

3. ——— WHETHER FRAUDULENT AS TO CREDITORS—WHAT MUST APPEAR AS TO MORTGAGEES.—In the consideration of the question as to whether there was any secret agreement or understanding between the parties to the mortgage that it should be given and the goods taken and held thereunder to the use and benefit of the mortgageors, so as to shield the property from the other creditors of the mortgageors, it is no matter what may have been the fraudulent purpose and intent of the mortgageors in making the conveyance, unless such fraudulent intent was known to and participated in by the mortgagees, the mortgage would stand.

4. PRACTICE—INSTRUCTIONS—PROPER CHARACTERISTICS OF.—It is proper enough, under certain circumstances, to have the jury told as to the legal effect of one fact upon another. Instructions of that character are far more satisfactory guides to the jury than those which deal in vague generalities.

5. PRINCIPAL AND AGENT—EXTENT OF AUTHORITY OF AGENT—HOW DETERMINED.—Where there is a controversy as to the extent of authority given by a principal to his agent, or a denial of it by the principal, the question is not so much what was the actual instruction to or limitation upon the agent, as between him and his principal, as what power or authority third persons have a right to assume was given him by the principal. And such apparent authority is to be gathered from all the facts and circumstances in evidence, and is a question of fact to be drawn therefrom by the jury.

6. PRACTICE—INSTRUCTIONS—WHERE REFUSAL OF NOT GROUND FOR REVERSAL.—Where all the substantial issues were presented in the instructions given, as in this case, and the merits appear to be decidedly in favor of the verdict of the jury, on the whole case, this court will not remand for another trial, because of the refusal of an instruction, which, though it might have been given without serious objection, could not by any reasonable probability have caused the jury to reach a different conclusion.

APPEAL from Cole Circuit Court, HON. E. L. EDWARDS, Judge.

*Affirmed.*

Statement of case by the court.

This is an action by attachment, instituted on the fifteenth day of March, 1882, in the Miller circuit court. The ground of the attachment, as alleged in the affidavit, was that defendants had fraudulently conveyed and assigned their property and effects so as to hinder and delay their creditors. At the return term, September following, E. A. Phillips & Company, a partnership composing E. A. Phillips and George W. Sedgewick, interpleaded in said cause, claiming the property attached, consisting of certain goods usually kept in a dry goods store. The cause, on application of interpleaders, was transferred by change of venue to the Cole county circuit court. The defendants, Golden & Company, made no defence. Prior to the filing of the interplea the attaching creditors, with other creditors of said Golden & Company, who had also attached the same property, brought their action, under the provisions of section 448 of the Revised Statutes, to set aside for fraud the chattel mortgage given by said Golden & Company to said E. A. Phillips & Company on said goods prior to the levying of the attachment, and under which E. A. Phillips & Company claimed possession and title to said goods. This action was also returnable to the September term of the Miller circuit court. This action was likewise transferred, at said term, by change of venue, to the Cole circuit court, and was received by the clerk of the latter court prior to the transcript in the attachment suit. But the clerk placed the attachment suit first on his docket. At the following May term of the Cole circuit court, when the cause of the interplea came on for trial, the plaintiffs moved the court to try the action arising on the petition to vacate the mortgage first. This motion the court overruled, and proceeded with the trial of the issues on the interplea.

The appellants, plaintiffs below, have not furnished this court with an abstract of the record, setting out the evidence, or excerpts therefrom, as required by the rule of court, but have merely made a statement of what they conceive the evidence tended to show, mingled, all through, with comments and suggestions thereon, more in the nature of a running argument based on their construction of the evidence than the actual statement of the witnesses and the written evidence. The respondents have set out the evidence on their behalf conformably with the rule, and we shall consider this case, as it is here presented; and if appellants have not the benefit of certain facts claimed by them to exist, they have no one to complain of but themselves.

The evidence, in brief, shows about the following state of facts: The firm of Golden & Company, for some time prior to the third day of March, 1882, were doing business principally at the town of Tuscumbia, on the Osage river, in Miller county, as general merchants, and had other small stores at points on said river in that vicinity. In 1881 they made a contract with interpleaders, residing at Kansas City, for the delivery to them of one hundred thousand railroad ties. The contract was that the ties were to be delivered by Golden & Company at the mouth of the Osage river, where it empties into the Missouri river. When the ties were brought by Golden & Company to the river bank on the Osage, Phillips & Company were to pay them, on such ties as were inspected and approved, the sum of twenty-two cents each, and ten cents more on the completion of the delivery at the mouth of the river.

All the ties were to be so delivered by the month of July, 1882. During the winter of 1881–1882, Golden & Company had received from Phillips & Company, as advancements on said contract, about the sum of twenty thousand dollars, and had delivered along the banks of the river about seventy thousand ties up to the third day of March, 1882, but only a very small portion had

reached the mouth of the river. In February, 1882, a freshet of unusual violence and volume swept away most of the ties so lying along the banks of the river. Golden & Company were largely in debt, on this account, to interpleaders, and to other creditors, and concluded that they could not proceed further in business without material assistance.

One Clayton Phillips (not related to E. A. Phillips), who had prior to this time been a member of the firm of Golden & Company, claiming now to be acting as agent for Golden & Company, went to Kansas City to see interpleaders to induce them to make an advancement of about ten thousand dollars to Golden & Company, to relieve them of embarrassment. This interpleaders refused; but suggested to Clayton Phillips that he had better go to St. Louis, where the bulk of the other creditors resided, and see if some adjustment of Golden & Company's indebtedness could not be effected; with assurance that if that could be accomplished interpleaders would make some advancement to the end desired. The testimony of Clayton Phillips is, that he accordingly went to St. Louis, and saw the creditors, including the attaching plaintiffs, and arranged for a meeting of said creditors; that at said meeting one David Nicholson, a clerk or collecting agent of the plaintiff, Peter Nicholson, was present; that he (Clayton Phillips) made a statement of the financial condition of Golden & Company, and proposed a compromise; that it was agreed at said meeting, no one objecting, that a committee of three should be appointed to employ counsel to go to Tuscumbia to investigate and arrange the matter. This committee selected for this office one Charles Davis, an attorney of St. Louis, who proceeded at once to Tuscumbia. E. A. Phillips also went to Tuscumbia about the first day of March, where he met Davis and said David Nicholson. An examination was made by the parties into the state of Golden & Company's affairs. It seems that Nicholson was then

threatening to sue or attach. Phillips stated that if a compromise could be effected with all the creditors at forty cents on the dollar his firm would advance that sum to them, taking a mortgage from Golden & Company on their property to secure to Phillips & Company their debt and the sum so advanced. The parties all returned to Tuscumbia. Davis was willing, on behalf of the parties he represented, to accept this proposition; and both he and Phillips testified that Nicholson consented thereto; and thereupon, in reliance on this fact, Phillips and Davis returned immediately to Tuscumbia, and closed the arrangement with Golden & Company. Davis drew up for the parties a chattel mortgage on certain real estate, the said goods, and all the ties which Golden & Company had on the river, as well as those washed away, and on all such as they might thereafter get out, to secure the amount already advanced on the former contract, and the sum to be advanced to said creditors. This mortgage was duly acknowledged by Golden & Company, and filed for record on the third day of March, 1882.

. Interpleaders' evidence tended to show that the goods in question were then turned over by the mortgageors to interpleaders, and that one Lee Sedgewick took possession for and on behalf of interpleaders. There was also some evidence tending to show that the business continued in the name of the mortgageors, which is sufficiently noticed in the opinion hereafter. Interpleaders thereupon made out and sent to Davis a draft, for about the sum of forty-five hundred dollars to be by him paid over to the creditors of Golden & Company in satisfaction of the compromise of forty cents on the dollar. Davis stated that Phillips was unwilling to make this advancement unless all the creditors accepted the compromise, and that he told Phillips, that if they did not do so the mortgage could be cancelled and the money returned to him. All the creditors seem to have accepted this money except the plaintiffs and a firm in

New York and a firm in Tuscumbia. Davis accordingly paid over the money to the accepting creditors, and returned the amount not accepted to interpleaders. This amount bears but a small proportion to the amount so paid over.

After the execution of the mortgage interpleaders bought large amounts of goods for replenishing the stock in the store at Tuscumbia, which goods were billed and shipped in their name, and were mingled with the goods in question, and there is nothing in the record to show but a part of the goods so purchased by interpleaders were attached. The goods seized under the attachment were sold under order of the court, and the proceeds are held by the sheriff to abide the result of this litigation.

About June, 1882, interpleaders and Golden & Company, had a settlement of all the matters between them, as it became manifest that Golden & Company would not be able to redeem. By this settlement the whole property was turned over to interpleaders absolutely, and the indebtedness of Golden & Company to them was forgiven. The evidence of interpleaders was that they sustained in this transaction with Golden & Company a loss of about ten thousand dollars. There was other evidence in the case, but its important features are sufficiently noticed in the opinion of the court.

On behalf of interpleaders the court gave the following declarations of law:

"1. If the jury believe, from the evidence, that the indebtedness secured by these mortgages read in evidence was a valid and *bona fide* indebtedness and that said mortgages were accepted in good faith by E. A. Phillips & Company, to secure said indebtedness and that thereafter and before the levy of the attachment by the plaintiffs in this cause said E. A. Phillips & Company took actual possession of the stores and goods therein mentioned in said mortgages, including the goods attached, for the purpose of holding the same until said debt was

paid by applying the proceeds of the sales thereof to the liquidation and payment of said debt and were so in the possession for that purpose and in good faith, and the debt had not been paid when plaintiffs' attachment was levied, then the jury will find for these interpleaders."

"2. Although the jury may believe, from the evidence, that after the execution and delivery of the mortgages, read in evidence, the Goldens remained in the stores in Tuscumbia, mentioned in said mortgages, and continued to make sales of goods therein, and even though during said time orders may have been given, and bills may have been made out in the name of Golden & Company, and said firm of Wm. Golden & Company may have transacted other matters in and about said business, still these facts do not prevent the interpleaders from recovering herein, provided the jury further believe, from the evidence, that said mortgages were accepted by E. A. Phillips & Company, in good faith, to secure an honest indebtedness, and that said E. A. Phillips & Company, before the levy of the attachment in this suit, had by agreement with the mortgageors placed their agent in said stores and in control and charge of the goods therein, for the purpose of holding the same until the mortgage debt was paid, with the proceeds of the sales of said goods, and said agent was so in said store and in charge of said goods when the attachment was levied, and said mortgage debt had not been paid."

"3. The jury are instructed that, although they may believe that Lee M. Sedgewick was not personally present as agent of E. A. Phillips & Company, in Tuscumbia, or in the store named in this mortgage, at the time of the levy of the attachment in this suit, that this fact, of itself, is no defence against the interplea on this issue, provided the jury believe that such absence, if it occurred, was only temporary, existed without any intent on the part of the said Lee M. Sedgewick, of relinquishing his control and possession of the attached

goods, provided said Sedgewick had, prior to said absence, been in possession of the same, in good faith, under the mortgages, and in evidence that the mortgages had been accepted in good faith by the interpleaders, to secure an honest indebtedness."

"4. If the jury believe, from the evidence, that David Nicholson, at the time he visited Jefferson City, prior to the execution of the mortgages, read in evidence, had full authority to act for plaintiff in and about the collection and settlement of their claims against Golden & Company, and sued on in this action, and if the jury believe that the said David Nicholson then agreed with the interpleaders, or either of them, that if the interpleaders would pay forty per cent. in cash on the plaintiffs' said claim, and if Golden & Company would further give them a note for ten per cent. additional on said claim, that plaintiffs would receive said money and note in full settlement of their claims against Golden & Company, and if the jury further believe that at said time said David Nicholson assured the interpleaders and agreed with them that in consideration of the payment of said money and the giving the said note, plaintiffs would not sue out an attachment against the property and goods of Golden & Company, but would consent to the interpleaders taking a mortgage on the same, and applying the proceeds thereof to paying the indebtedness, if such existed, of Golden & Company, to the interpleaders, and said Golden & Company carried out their part of said arrangement, in good faith, with plaintiffs, and that relying on said assurance of plaintiffs' agent and their agreement with him, if such existed, and being induced thereby, did accept said mortgages and were so applying said goods to the payment of Golden & Company's debt to them, when the attachment was levied, the said plaintiffs in this action are estopped to claim said goods, and the jury will find for the interpleaders."

"5. Although the jury may believe, from the evi-

dence, that W. Golden & Company made the mortgages, read in evidence, with the intent to defraud, hinder, or delay their creditors; still, if the jury further believe, from the evidence, that E. A. Phillips & Company, the mortgagees and interpleaders, were not a party to such fraudulent intent, but took the mortgages in good faith, to secure an honest indebtedness, the interpleaders will in no manner be affected by the fraudulent intent or purpose of said William Golden & Company, if such intent and purpose really existed, and the jury are instructed that in this case, although said mortgages have the effect of defrauding other creditors in the collection of their debts, provided they were accepted in good faith to secure an honest indebtedness."

" 6. The law presumes that all persons transact their business honestly and in good faith until the contrary appears, and the burden of proving fraud is always on the party claiming it."

On behalf of plaintiffs the court instructed the jury as follows :

" 1. The jury are instructed that the interpleaders in this case claim title to the goods, wares, and merchandise attached in this case by virtue of the mortgages offered in evidence, and upon the theory that upon the execution of the first mortgage the mortgagees, E. A. Phillips & Company, took actual possession of the goods, wares, and merchandise afterwards attached, and the jury are further instructed that if they believe and find, from the evidence, that said mortgages were made by William Golden & Company, and accepted by E. A. Phillips & Company, with the intent or purpose to hinder, delay, or defraud any of the other creditors of Golden & Company in the collection of their just demands or any portion thereof; or if the jury believe, from the evidence, that the said E. A. Phillips & Company did not, after the execution of said mortgages and before the levy of the attachments, take and continue in the actual, visible, and exclusive possession of said

goods, wares, and merchandise therein, then your verdict will be in favor of the attaching creditors and against the interpleaders."

"2. The court instructs the jury that, in order to render a mortgage of a store of goods, the business still continuing, valid against creditors, it must be followed by an actual and continued change of possession; must be so open, notorious, and unequivocal as to apprise the community that the possession and control of the goods has passed out of the mortgageors and into the mortgagees, and, in this case, unless the jury believe, from the evidence, that the change of possession of the store and wares therein was so substantial, open, and notorious as to apprise the community of the fact, the verdict will be against the interpleaders."

"3. If the mortgages and alleged transfer of the goods, wares, and merchandise referred to in the interplea were made and accepted with the intent to hinder and delay the creditors, then the same were fraudulent and void as to such creditors, and, on such state of facts, the jury will find against the interpleaders and in favor of the attaching creditors."

The court refused the following instructions, asked by plaintiffs:

"4. Although fraud is not presumed, yet positive evidence is not required to establish fraud, and, in determining the question of fraud, in this case, the jury will take into consideration all the facts and circumstances in evidence, and if such evidence produces, in the minds of the jury, a reasonable satisfaction or belief of fraud, they are warranted in so finding by their verdict, and fraud may be proved by circumstantial, as well as direct, evidence."

"5. Although the jury may believe, from the evidence, that, at the time the first mortgage was executed, on March 3, 1882, by William Golden & Company, to E. A. Phillips & Company, the said Golden & Company were largely indebted to Phillips & Company, and said

mortgage was made to secure said indebtedness, yet, if the jury further believe, from the evidence, that said mortgage was made and accepted for the further purpose of compelling and forcing any other creditors of William Golden & Company to accept fifty cents on the dollar of their just claims and demands against the said William Golden & Company, then said mortgage was fraudulent and void as to the creditors of William Golden & Company, and the jury will find against the interpleaders.''

"6. The court instructs the jury that the delivering of a stock of goods, conducted and carried on in a secret and deceitful manner, and to which no publicity is given in the community, is, in law, a fraudulent transfer, as against creditors.''

"7. The court instructs the jury that if, from the evidence, they believed that, after the mortgage of Golden & Company to E. A. Phillips & Company, said Golden & Company, either by their employes or agent, remained in the possession of said goods or store, or, in any manner, by the knowledge or consent of E. A. Phillips & Company, exercised any management, control, or disposition of said goods, or any part thereof, and applied the proceeds, or any part thereof, to their own use, or the payment of debts other than that of Phillips & Company, then the jury will find against the interpleaders for the plaintiff.''

"8. The jury are instructed that no compromise of a debt for less than the full amount is valid, unless the creditor either stipulates in writing, or accepts a certain percentage or portion of the entire amount in satisfaction of the whole.''

"9. The court instructs the jury that if, from the evidence, they believe that Mr. Davis was the attorney for a part of the creditors of William Golden & Company, and, also, the adviser of E. A. Phillips & Company in the taking of the mortgage, and that, at the time the mortgage was taken, it was agreed that the

mortgage should be cancelled, unless all the creditors agreed to the compromise, and, if all creditors did not agree to, and accept, the compromise offered by Golden & Company, that said mortgage, by Golden & Company to E. A. Phillips & Company, is void in law."

"10. If the jury believe, from the evidence, that, prior to the time the first interplea was filed in this case, E. A. Phillips & Company, the interpleaders, had made a full and complete settlement of their affairs with William Golden & Company, and that they, in such settlement, acknowledged full satisfaction for all claims, demands, and indebtedness, including the notes mentioned in the mortgages, under which the interpleaders claim the right to possession of the goods, wares, and merchandise in controversy, then the jury are instructed that the interpleaders cannot recover in this case."

The jury found the issues for the interpleaders, and the plaintiffs have brought the case here by appeal.

MOORE & WILLIAMS and HAMILTON & FISHER, for the appellants.

I. The court erred in trying this case before the action to set aside the mortgage, upon which the claims of interpleaders is based, was tried. The provisions of the law giving attaching creditors the right to join in an action to set aside a fraudulent mortgage (Rev. Stat., 1879, sect. 448), which was first adopted in this state in 1860, were evidently intended to prevent a multiplicity of trials. The action of the court in trying the interplea, while the suit to set aside the mortgage was pending, rendered the law a nullity. In *Donnell v. Byern* (69 Mo. 468), this question came up in the trial court, which, against the objections of the interpleaders, postponed the trial of the interplea, to that of the action to set aside the mortgage. The point was proved, as will be seen by reference to the transcript; and, though the opinion does not refer to it specially, it declares that no

error was committed, except as to another point in the instructions. To illustrate the effect of this error, suppose upon the trial of the action to set aside the mortgage, the findings should be for plaintiff, and the mortgage be declared fraudulent and void? (We remark in parenthesis, outside the record, that this is actually the condition of this case).

II. The mortgage, under which the interpleaders claim the property, is fraudulent and void upon its face. It was to the use of the grantors. The mortgageors are left in possession until default, when the mortgagees could take possession of such of the goods as remained. No definite time as to future advancements is fixed on. How long should such indebtedness run? "The creditors are kept at arm's length, at the pleasure of defendants"; goods may be purchased, and the business continued indefinitely; there is no provision that this process shall be applied to the indebtedness of interpleaders, if such existed; property, indefinite in amount, quantity, and location is tied up. The whole scope of the instrument is fraudulent, and the effect is to hinder and delay creditors. *State to use v. Mueller*, 10 Mo. App. 87; *Robinson v. Elliott*, 22 Wallace [U. S.] 513; *Bigelow v. Stinger*, 40 Mo. 195; *Brooks v. Winner*, 20 Mo. 503; *Martin v. Maddox*, 24 Mo. 575, and cas. cit.; *White v. Graves*, 68 Mo. 218.

III. Outside the terms of the mortgage, the facts disclose the transactions between the parties to have been fraudulent in law and fraudulent in fact. The notes described in the mortgage were, in the aggregate, $23,814.76, with a stipulation to advance five thousand dollars at some indefinite time in the future. There is no evidence that the notes were executed. These notes did not represent an actual *bona fide* indebtedness. The interpleaders claimed to have advanced some nineteen thousand dollars to the defendants, Golden & Company, upon their railroad tie contract. This contract

was in writing, but was not produced. As proved by parol, against the objections of plaintiffs, Golden & Company agreed to get out and deliver to interpleaders one hundred thousand railroad cross-ties, on the Osage river, the price per tie being thirty-two cents, twenty-five cents to be paid when the ties were made and banked on the Osage, and inspected and received by the interpleaders. This inspection was to be made monthly, the ties received and inspected to be marked by the inspector with the brand of the interpleaders; the remaining seven cents to be paid on the delivery of the inspected ties at the mouth of the Osage river. This covered the average cost of rafting. Some seventy thousand, or upwards, had been inspected, up to the time of giving the mortgage. This represents over seventeen thousand dollars of the intended indebtedness, and our position is that these inspected ties, when so branded, received, and paid for, were the property of interpleaders. *Steam Mill Co. v. Brown*, 57 Me. 9; *Boynton v. Veazee*, 24 Me. 206; 2 Kent's Com. [10 Ed.] 690.

IV. The court erred in the giving and refusing of instructions. It gave all the instructions asked by interpleaders. All, except that as to form of verdict, are erroneous and misleading. (1) The evidence does not sustain the theory of the first instruction. The technical term, *bona fide* indebtedness, is not explained; (the evidence shows that it did not, in fact, exist); and that the interpleaders did not take possession of the goods attached, and that the proceeds were not appropriated to the payment of debts to them. (2) The second instruction is not the law, it virtually tells the jury that interpleaders could hold the goods by virtue of a secret trust, by simply having an agent in the store occupying the place of an automaton, so far as creditors, customers, and the public can observe or know; such secret trusts are abhorrent to the law. *Lesem v. Herriford*, 44 Mo. 323. (3) The third instruction is clearly wrong; it is a comment on evidence, an assumption of facts not proved;

argumentative and misleading. *Belt et al. v. Goode*, 31 Mo. 128. (4) The fourth instruction was the one that, in fact, secured a verdict for interpleaders. Had the witness, David Nicholson, who was in fact only a clerk for plaintiffs' firm, agreed verbally to the terms set out in the instructions; and that in consideration interpleaders would pay forty per cent. of plaintiffs' indebtedness, and Golden & Company give a note for ten per cent., plaintiffs would not sue out an attachment against Golden & Company, but would consent to interpleaders taking a mortgage, etc., that with the consent and authority of plaintiffs' firm; still there would be no estoppel in this case, since the agreement was not in writing, it was without consideration, neither paid nor offered to pay the forty per cent. David Nicholson denies any such statement on his part. But beyond all this there is not a particle of evidence that David Nicholson had any authority to make any agreement to compromise, or offer to compromise, the plaintiffs' claim. Every estoppel must be reciprocal and be binding on both parties. Brown, Law Dic., title, Estoppel. (5) The fifth instruction is erroneous and is not justified by the evidence; the interpleaders were the chief actors, and instigators of the fraud. (6) The sixth instruction is misleading, and should have been qualified by the fourth instruction asked by appellants. Taking all the instructions given for interpleaders together, they were wrong in theory, not justified by the facts or the law applicable to the case, and were absolutely contradictory to those given for appellants. No court can be upheld in giving contradictory instructions, and juries are not expected to harmonize the law when so given by the court. *Goetz v. Railroad*, 50 Mo. 472; *State v. Nauert*, 2 Mo. App. 295; *Singer Manufacturing Co. v. Hudson*, 4 Mo. App. 145; *Stevenson v. Hancock*, 72 Mo. 612; *Modisett v. McPike*, 74 Mo. 636; *Rice v. Railroad*, 77 Mo. 508. (7) The trial court erred in refusing the fourth instruction for appellants. This instruction was necessary to

qualify the seventh instruction given for interpleaders, which, standing alone, is an abstract proposition and misleading. *Field v. Beardslee*, 17 Mo. 219, where the court approves this instruction. (8) The fifth instruction asked by appellants should have been given. The evidence of both the interpleaders and defendants sustain this theory. (9) The seventh instruction asked by appellants should have been given. Such appropriation would be for the use of the mortgageors, and there was evidence tending to show this state of facts. *Southard v. Bonner*, 72 N. Y. 424. (10) The eighth and ninth instructions should have been given. They are clearly the law, and were necessary to guide the jury in coming to a right conclusion upon the many complicated facts in this case, and to counteract the position of the fourth instruction for interpleaders. (11) The tenth instruction asked by the appellants should have been given ; certainly, if Golden & Company were not indebted to the interpleaders, upon the notes or other alleged indebtedness recited in the mortgage, they, the interpleaders, had no standing in court to claim the proceeds of the attached goods, which were *in custodiam legis* to abide the result of plaintiffs' suit.

V.   Upon the whole case the court ought to have given the instructions asked by appellants on the conclusion of the evidence, as a matter of law directing the jury to "find the issue against the interpleaders." The evidence, on the whole, did not tend to prove the main fact in issue, *i. e.*, that the interpleaders were the owners of the property, or that they held any legal possession thereof under the mortgage. There was an utter insufficiency of evidence, in law, to entitle interpleaders to a verdict. Thomp. on Charg. Jury, 44; *Callahan v. Warne*, 40 Mo. 132 ; *Boland v. Railroad*, 36 Mo. 484 ; *Lee v. David*, 11 Mo. 114 ; *Wright v. McCormick*, 67 Mo. 426 ; *Stewart v. Nelson*, 79 Mo. 524.

GAGE, LADD & SMALL, also for the appellants.

I.   The court erred in giving the interpleaders'

instructions numbered two and three, because each of these instructions singles out from the body of the whole case separate facts, and declares to the jury the legal effect of such facts without reference to other facts in evidence, bearing upon the same issue. *Sigerson v. Pomeroy & Andrews*, 13 Mo. 621 ; *Sawyer v. Railroad*, 37 Mo. 240 ; *Jones v. Jones*, 57 Mo. 142 ; *Wyatt v. Railroad*, 62 Mo. 408 ; *Mansur v. Botts*, 80 Mo. 652.

II. The interpleaders, by their failure to produce in evidence the written contract between Golden & Company and themselves for the ties, and to show by their books the items of their account for advances, or to show any excuse for such failure, furnished the strongest possible evidence against their claim, both as to its validity and its amount. *Baldwin v. Whitcomb*, 71 Mo. 651.

III. The fourth instruction given for the interpleaders was erroneous: (1) Because there was no evidence whatever of David Nicholson's authority to agree to compromise the debt of Golden & Company. (2) Because such agreement, if made, was not binding. (3) Because said agreement, if made, was conditional upon the acceptance of all the creditors, and they never accepted. (4) And, chiefly, because if the mortgage was fraudulent for the causes alleged, it would constitute no estoppel in favor of Phillips and Sedgwick and against plaintiffs.

IV. The sixth instruction given for interpleaders was wrong, and placed the burden of proof on the wrong party.

V. The court erred in refusing to give plaintiffs' fourth instruction. *Burgert et al. v. Borchert*, 59 Mo. 80 ; *Hopkins, etc., v. Seivert*, 58 Mo. 201 ; *Massey v. Young*, 73 Mo. 260.

EDWIN SILVER and DOBSON & DOUGLASS, for the respondents.

I. Appellants made no objection at the trial to the evidence of the contents of the tie contract between E.

A. Phillips & Company and Golden & Company. It is too late now to object that the original written contract was not produced. The same answer can be made to the objection that there was no proof of the execution of the notes secured by the mortgages. Their contents were stated by the witnesses who testified at the trial, and appellants made no objection to that testimony.

II.   (1)   The first instruction given for interpleaders was proper. *Greeley v. Reading*, 74 Mo. 309. If anything, it was too favorable to plaintiffs on the question of possession. *Goodwin v. Kerr*, 80 Mo. 276; *Metzer v. Graham*, 57 Mo. 404; *Conklin v. Shelley*, 28 N. Y. 360. (2) Respondents' second instruction is also unobjectionable. *Read v. Wilson*, 22 Ill. 377; *Carpenter v. Snelling*, 97 Mass. 456; *Greeley v. Reading*, 74 Mo. 309; *Metzer v. Graham*, 57 Mo. 404. But the instruction went further on the question of possession than was necessary, for the mortgageors, themselves, could have remained in possession under an agreement to apply the proceeds of the sales to the payment of the mortgage debt. *Metzer v. Graham*, supra; *Conklin v. Shelley*, supra. (3) There can be no well-founded objection to respondents' third instruction. (4) Respondents' fourth instruction seems to be the most complained of by appellants in their brief. The objections to it are untenable. (*a*) The extent of an agent's authority is a question for the jury. *Hough v. Insurance Co.*, 3 Wood & M. 529; *Howe Machine Co. v. Snow*, 32 Iowa, 435, 436, 437. (*b*) An agent's authority may be inferred from the facts and circumstances in evidence. *Franklin v. Insurance Co.*, 52 Mo. 41; *Hull v. Jones*, 60 Mo. 587; *Brooks v. Jamison*, 55 Mo. 505. ·Whether an agent obeys or disobeys the instructions of his principal is a question of fact for the jury. *Sigerson v. Pomeroy*, 13 Mo. 620. The real question is not what power was intended to be given, or was actually given to the agent; but what power a third person had a right to infer was given from the acts of the agent and principal.

*Sumner v. Sanders*, 57 Mo. 89 ; Story on Agency [9 Ed.] sect. 127. The remainder of respondents' instructions announced well-established principles of law in this class of cases. *Shelley v. Boothe*, 78 Mo. 74; *Forrester v. Moore*, 77 Mo. 651 ; *Holmes v. Braidwood*, 82 Mo. 613.

III. It is apparent, from the whole evidence, that Nicholson & Company have sustained no injury from the instructions given ; that the result would have necessarily been the same ; that, the judgment being for the right party, it is immaterial whether some of the instructions are technically erroneous or not. *Swearengen et al. v. Orme*, 8 Mo. 707.

PHILIPS, P. J.—I. The first contention of appellants is that the trial court erred in overruling the motion to advance on the docket and first try the action to set aside the mortgage for fraud. The most that can be conceded to this contention is, that section 448, Revised Statutes, which authorizes the attaching creditors to maintain an action for the purpose of setting aside a fraudulent conveyance, etc., where the suit is brought prior to the issue and determination of an interplea, the interpleader claiming title under the assailed instrument of conveyance, would obviate the necessity of a trial of the interplea ; as the object of the statute is thus to determine the very issues arising on the interplea. The first action, therefore, would be another suit pending between the same parties on the same cause of action. By section 3515, Revised Statutes, concerning practice, this objection is made the ground of special demurrer. Section 3519 declares that, "When any of the matters enumerated in section 3515 do not appear on the face of the petition, the objection may be taken by answer. If no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting only the objection to the jurisdiction of the court over the subject matter of the action, and excepting the objection that the petition

does not state facts sufficient to constitute a cause of action." As the fact of the pendency of the action to set aside the mortgage in question, did not appear upon the face of the petition, the interplea, the objection should have been raised by answer. Having failed to so raise the same, it must be held to have been waived by the plaintiffs.

II. The mortgage is not void on its face. As it was duly acknowledged and recorded, the fact that it might be construed possibly as contemplating that the mortgageors should remain in possession of the goods, would not vitiate it. *Weber v. Armstrong*, 70 Mo. 217. The fact that sales were made afterwards by the mortgageors, apparently in the usual course of business, raises simply a question of fact for the determination of the jury, as to whether it was so done pursuant to a secret understanding between the parties that the mortgageors should so sell to their own use. Notwithstanding they may have sold goods, and that such was the understanding between them and the mortgagees, that would not vitiate the mortgage, if the proceeds arising from such a sale were to be applied to the use of the mortgagees under the mortgage. *Hewson v. Tootle*, 72 Mo. 635.

The appellants had the full benefit of the law in the instructions given by the court, and more than the law requires. In fact it is quite apparent that the court tried the case on the theory, at plaintiffs' insistence, that the mortgage was void on its face, and that, therefore, absolute, unqualified, and uninterrupted possession of the goods must be shown in the mortgagees, from the time of the execution of the mortgage up to the time of the attachment, otherwise the verdict must be for the plaintiffs. And this issue having been found for the interpleaders by the jury, it must eliminate from this case many of the criticisms and suggestions made at this bar touching the merits. The jury having found by their verdict, that interpleaders took and held posses-

sion of the goods, openly and continuously, and there having been evidence tending to support this finding, the conclusion of the jury is binding on this court, and cuts up by the roots any attack on the form of the deed. Jones' Chat. Mort. 178 ; *Greeley v. Reading*, 74 Mo. 309 ; *Moser v. Claes*, 23 Mo. App. 420.

III. There is no ground for questioning, as in the argument at this bar, the existence and *bona fides* of the debt secured by the mortgage. In fact, it is manifest, from the record, that no contention as to this matter was made by plaintiffs on the trial. In none of the instructions asked by plaintiffs, did they demand the opinion of the jury on this important fact.

On the contrary, the uncontradicted evidence was that the contract provided for the delivery of the ties by Golden & Company, at the mouth of the Osage river. That being the designated point for final delivery, the contract was not fully performed by Golden & Company, by a delivery short of that point. The ties, until so delivered, remained at the risk of the contractors. The fact that Phillips & Company were to pay a certain per cent. on the contract price, on Golden & Company placing the ties along the river bank, and their inspection, was no more than if they had agreed to pay Golden & Company so much in advance, or on the felling of the timber. Had the ties not been delivered at the mouth of the river, the contract would have been broken, and the measure of damages would have been the value of the ties at the mouth of the river. *Dobbins v. Edmonds*, 18 Mo. App. 321; *Rickey v. Tenbroek*, 63 Mo. 567.

IV. The only real question, therefore, left for the determination of the jury was, whether there was any secret agreement or understanding between the parties to the mortgage, that it should be given, and the goods taken and held thereunder, to the use and benefit of the mortgageors, so as to shield the property from the other creditors of the mortgageors. No matter what may have been the fraudulent purpose and intent of the

mortgageors in making the conveyance, unless such fraudulent intent was known to, and participated in by, the mortgagees, the mortgage would stand.  *Shelley v. Boothe*, 73 Mo. 74.

We wholly fail to discover, in this record, any evidence whatever of any overt act or word of the mortgagees, anterior to the execution of the mortgage, from which a jury would be upheld in finding a verdict predicated of such fact.  This, then, narrows the issue to the acts, conduct, and declarations of the mortgagees and of the mortgageors, made known to, and acquiesced in by, the mortgagees, after the execution of the mortgage.

The instructions, taken as a whole, although subject to some verbal criticism, we think, quite clearly and fairly presented this issue to the jury.  Criticism is made on some of the instructions that they single out certain facts, *disjecta membra*, and tell the jury that this and that will not constitute fraud, rather than by grouping together all the facts and circumstances in evidence, which is permitted in the investigation of fraud. We do not think the criticism justly applied to the instructions in this case.

It is proper enough, under certain circumstances, to have the jury told as to the legal effect of one fact upon another.  " Instructions of that character are far more satisfactory guides to the jury than those which deal in vague generalities."  *Zimmerman v. Railroad*, 71 Mo. 71.  For instance, as in the case of *Hewson v. Tootle* (*supra*), where the evidence showed that, after the execution of the mortgage, the mortgageors continued to sell, apparently in the usual course of trade, which was a badge of fraud ; yet if this was done pursuant to an agreement between the parties to the mortgage, in good faith, that the goods should be so sold and the proceeds applied to the satisfaction of the mortgage debt, this would disprove the fraudulent intent which the jury might infer from the first fact or act, and the mortgagee would be entitled to have the jury so instructed.

The third instruction, given for the interpleaders, told the jury that, although the agent, Lee Sedgewick, claimed by interpleaders to have been placed in charge of the store for them, may have been absent when the goods were seized under the writ of attachment, yet if the jury further found that such absence was merely temporary, without any design to surrender the possession, and his prior possession had been in good faith, such absence ought not to avoid the mortgage, or defeat the interpleaders' claim. This was the law, and the interpleaders were entitled to have the jury so directed. Jones' Chat. Mort. 180; *Carpenter v. Snelling*, 97 Mass. 452.

V. The fourth instruction, given for the interpleaders, is objected to, because it is predicated of the fact and assent of one David Nicholson, whereas, it is claimed by appellants there was no evidence to warrant the jury in finding that he had any authority from his principals, the plaintiffs, to bind them in the matter.

It may be conceded, to the contention of appellants, that a mere authority to David Nicholson, to collect the debt owing to Peter Nicholson & Company, did not authorize him to compromise the debt. But the question, in such cases, is not so much what was the actual instruction to, or limitation upon, the agent, as between him and his principal, as what power or authority third persons have a right to assume was given him by the principal. Story on Agency, sect. 127. And such apparent authority is to be gathered from all the facts and circumstances in evidence, and is a question of fact to be drawn therefrom by the jury. *Brooks v. Johnson*, 55 Mo. 505; *Sigerson v. Pomeroy*, 13 Mo. 620; *Howe v. Machine Co.*, 32 Iowa, 435-6-7; *Hough v. Ins. Co.*, 3 Wood & M. 529.

The evidence of Clayton Phillips was that he went to St. Louis for the purpose of laying before the creditors of Golden & Company their embarrassment, and submitting a proposition for compromise; that he, accord-

ingly, saw the creditors, including; presumably, the plaintiffs; that a creditors' meeting was accordingly arranged, and that, at said meeting, said David Nicholson, from the plaintiffs' house, appeared. The reasonable presumption would be that the plaintiffs sent him there. This meeting, after hearing the proposition, entrusted the matter to a committee of three, to select an attorney to go on the ground and act for them. No one dissented. That committee selected Davis. So, Phillips, Davis, and David Nicholson appeared simultaneously at Tuscumbia, on or about the first day of March, just three days before the mortgage was executed. Phillips was unwilling to give the forty cents on the dollar, and undertake to give additional aid and money, unless all the creditors accepted the forty cents. After the parties returned to Jefferson City, Phillips and Davis testified directly that David Nicholson did consent, for his house, to accept the forty cents on the dollar; and that, in reliance thereon, Phillips entered into the arrangement of taking the mortgage and advancing this sum, amounting to about forty-five hundred dollars. Clayton Phillips had communicated to Phillips what occurred at St. Louis. It was not an unreasonable inference for the jury to make, from all these facts and circumstances, that David Nicholson had come up, after this creditors' meeting, his house knowing the object of the debtors was to effect a compromise, clothed with full authority to represent his house and enter into the compromise.

If Phillips was thereby induced, as he testified, to enter into the arrangement of taking the mortgage and advancing the money, and the plaintiffs had assented thereto, through their agent, so long as Phillips was ready and willing to comply and pay the plaintiffs their forty per cent., what concern was it of the plaintiffs what Phillips afterwards did with the goods? The arrangement with Phillips & Company was valid, based on a valuable consideration, and it was to Phillips &

Company the plaintiffs should, thereafter, have looked for the execution of the compromise. Assenting to the compromise, they could not assail the mortgage for fraud. *Burros v. Alter*, 7 Mo. 424. But, say the learned counsel, this may all be true, on the assumption that Phillips was acting in good faith, and was not in confederation with Golden & Company to fraudulently bring about such settlement for the benefit of Golden & Company, and that plaintiffs were entitled to have that question passed on by the jury.

In the first place, it may be answered that plaintiffs asked no such instruction, and directly presented no such issue at the trial; and if it had been presented, we are unable to discover in this record, as presented to this court, any evidence to justify an honest jury in so finding. At the time of the consummation of this compromise, at the Madison House, in Jefferson City, the day before the mortgage was executed, there is not one particle of evidence on which any court could permit a verdict to stand, finding that there was any combination or confederation between the Goldens and Phillips to fraudulently coerce a settlement with the creditors. On the contrary, Phillips had manifested a reluctance to adventure any more money where he already had so much at hazard. And the evidence of all parties was that the affairs of Golden & Company were in a most unpromising condition; and the result shows that they were hopelessly insolvent, entailing a loss of about ten thousand dollars on Phillips and Sedgewick. While the greatest latitude is allowed, necessarily, in the investigation of questions of secret fraud, the court should not throw down entirely the lines to the jury, and allow them to run at will, without evidence, or guide, or restraint.

Had Nicholson & Company brought this action, by attachment, on the day this compromise was effected, there would not have been a shadow of evidence for it to stand on. The only pretext of any evidence on which

to base their contention is as to certain matters which transpired after Sedgewick was put in possession of the store, consisting, almost entirely, in such acts as a failure to take down the sign of Golden & Company, and the clerks not knowing of any change of proprietorship, and the like (which have little force, in the case of a mortgage, acknowledged and recorded), and the more substantial acts of Golden & Company giving orders in their own name, and possibly using some goods out of the store for family use, when they were not receiving any pay for their services. But it was a mortgage not yet due, with the right of redemption yet in the mortgageors. To predicate the existence of a fraudulent anterior arrangement and combination between the parties to coerce plaintiffs into the compromise would be unreasonable, most speculative, and without substantial evidence to hang it upon.

VI. It may be well enough, in this connection, to notice that the fifth instruction asked by plaintiffs did request the court to declare that if the mortgage was taken and accepted for the purpose of compelling the other creditors to accept fifty cents, or less, on the dollar, the jury should find for the plaintiffs. But this, it will be observed, is predicated of the fact that the acceptance of the compromise was effected *after* the mortgage was taken ; whereas the undisputed evidence is, so far as the plaintiff is concerned, that his assent was given *prior* to the making of the mortgage, and when they knew that Phillips was to take the mortgage, in part to secure him for the very advances he and Sedgewick were to make, embracing the forty cents on the dollar to be paid plaintiffs, the whole transaction was open and understood. Nor can it make any difference that Phillips agreed to the arrangement, on condition that all the creditors assented thereto. This but goes to show his good faith, and was designed for the protection of Phillips & Company, and can in no wise affect the plaintiffs' rights, as

he consented to take that sum, and thereby induced Phillips to take the mortgage.

VII. Some of the instructions asked by plaintiffs, and refused by the court, are so palpably faulty as not to justify review. The seventh instruction was faulty in that it entirely ignored the question as to the interpleaders' knowledge of, or acquiescence in, the act of Golden & Company. The tenth instruction was properly refused. The fact that the parties to the mortgage, long after its execution, and long after bringing the attachment suit, agreed that the mortgagees might take the property and release the debt, when the mortgageors were confessedly insolvent, and without hope of reclamation, we are unable to perceive how it should affect, much less destroy, the interpleaders' right of recovery, existing at the time of the levying of the writ of attachment.

The fourth instruction, asked by plaintiffs, might have been given, without any serious objection. And if we could perceive that there was a reasonable probability that the conclusion of the jury might have been different, had it been given, it might invite a reversal. But as all the substantial issues were presented in the instructions given, and the merits appear to us to be so decidedly in favor of the verdict of the jury, on the whole case, we do not feel justified in remanding for a trial *de novo*, on this account.

Other questions have been discussed on this appeal, but they are not, in our opinion, of sufficient importance to justify the prolongation of this opinion, and they could not alter our conclusion.

The other judges concurring, the judgment of the circuit court is affirmed.