## LEO QUINT, Respondent, v. LOTH-HOFFMAN CLOTHING COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed July 11, 1921.

1. ACCOUNT STATED: Evidence: Insufficient to Establish. In an action on an account stated, where plaintiff asserts that the evidence shows conclusively that an account was stated between the parties by a first conversation, and defendant denies this and contends that the evidence conclusively shows that an account was stated by the parties by a second conversation and agreement made, followed by a payment thereof, evidence reviewed and *held* that the position taken by either party is unsound in that the evidence does not conclusively establish a stated account between the parties on either occasion.

2. ————: New Contract: Promise to Pay: Elements. A stated account is a new contract, and involves a meeting of the minds of the parties, and one of its essential elements is a promise, either express or implied, to pay the balance struck and agreed upon as correct.

3. ————: Trial Practice: Directed Verdict: Warranted Only Where Evidence is Undisputed: Otherwise Question for the Jury. Where the question whether or not there was an account stated between the parties embodying all the essential elements of such contract was a disputed question of fact, such question should have been left to the jury, as it is only where the evidence is undisputed that the court would be warranted in instructing the jury to return a directed verdict, and *held*, under the evidence, that the trial court was not justified in giving a peremptory instruction to find for plaintiff.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Ferriss,* Judge.

REVERSED AND REMANDED.

*Sale & Frey* and *David Goldsmith* for appellant.

(1)     That instruction was erroneous, because the present action is based upon an account stated and the evidence fails to establish the stated account pleaded. Cape Girardeau, etc. R. R. Co. v. Kimmel, 58 Mo. 83; Missouri Pacific Ry. Co. v. Commission Co., 71 Mo. App. 303; Fisse v. Blanke, 127 Mo. App. 431; Commercial etc. Co. v. Kroell, 85 Mo. App. 340; Columbia Brewing Company v. Berney, 90 Mo. App. 96; Davis & Co. v. Boswell & Strawn, 77 Mo. App. 294.     (2) The credit of the sum of $215.35 on plaintiff's account with the defendant constituted a payment *pro tanto* on that account.     30 Cyc. of Law and Practice, pp. 1187-1190; Royce v. Barrager, 116 Iowa, 673;     Hare v. Bailey, 73 Minn. 416; Grubbs v. Nixon, 123 S. W. 785.     (3) The delivery by the defendant to the plaintiff of two checks mentioned in the evidence constituted a payment of the defendant's account for commissions upon the condition that the check would be honored when duly presented. N. Y. Utility Company v. Steam Laundry Co., 175 N. Y. Supp. 60;- Burnstein v. Sullivan, 134 App. Div. N. Y. 625; Born v. Nat Bank, 123 Ind. 81; Houghton v. City of Boston, 159 Mass. 141, 142; Hodgson v. Barrett, 33 Ohio St. 63, syll. 3; Natl Park Bank v. Levy Brothers, 17 R. I. 749; 22 American & English Enc. of Law (2 Ed.), pp. 569, 570; Bailey v. Pardridge, 134 Ill. 188, syll. 5; McFadden v. Follrath, 130 N. W. 543; Holmes v. Briggs, 131 Pa. St. 233; Wedmore v. McInnis, 69 Pa. Superior Court, 220; R. H. Herron Co. v. Mawby, 89 Pac. 872; Stevens v. Park, 73 Ill. 387. (b) Accordingly, if the creditor who receives a check fails to present it in due time, any resultant loss will fall on him. Selby v. McCullough, 26 Mo. App. 70; Bonaparte v. Thayer, 95 Md. 548; Duffy v. O'Donoven, 46 N. Y. 223; Moore v. Twin City, etc., Co., 92 Wash. 613; Brown v. Schwartz, 202 Ill. 509; Watt v. Gans,

114 Ala., 264. (c) A tender of a check, if refused on some ground other than that it is a check, constitutes a tender of payment. 28 American and English Enc. of Law (2 Ed.), page 27; Raymond Kepler & Co. v. McKinney Bros. & Co., 58 Mo. App. 303; Beckham v. Puckett, 88 Mo. App. 635. If the tender of a check constitutes a tender of payment, the acceptance of the check must constitute acceptance of payment—at least, upon the condition hereinbefore noted, there being an implied warranty that the check will be honored when duly presented.

*Thomas S. McPheeters* for respondent.

(1) A statement showing the items of credit and debit between the parties with the balance struck and agreed between the parties as being correct constitutes an account stated, from which the law implies the promise of payment. All of these elements are found in the statement dated October 31, 1917, handed to the plaintiff by defendant. 1 Corpus Juris 678; Adam Roth Grocery Co. v. Hotel Co., 183 Mo. App. 429. (2) An unexecuted agreement without consideration is *nudem pactum*. 13 Corpus Juris 312. (3) The acceptance of a check does not constitute payment, unless it is expressly agreed that it should be taken as payment. 30 Cyc 1207; Barton v. Hunter, 59 Mo. App. 610; Block v. Dorman, 51 Mo. 32.

BIGGS, C.—This action upon an account stated resulted in a verdict and judgment for plaintiff for the full amount claimed by reason of a peremptory instruction given by the lower court of its own motion to the effect that the verdict of the jury must be for the plaintiff for the amount sued for. Defendant appeals asserting that the action of the court was not justified under the facts of the case as disclosed by the evidence.

The petition was in two counts, one based on a stated account, and the other on an open account. At

Quint v. Loth-Hoffman Clothing Co.

the close of plaintiff's case he dismissed his claim upon the open account and stood upon the first count of the petition, which is based upon an account alleged to have been stated on or about October 31, 1917, in the sum of $1419.82.

Defendant's answer was a general denial coupled with a special defense to the effect that an account was stated between plaintiff and defendant in April, 1918, and by that stated account is was agreed that defendant was indebted to plaintiff in the sum of $1204,47, and it is alleged that defendant had paid said sum in full satisfaction of plaintiff's claim.

The plaintiff was employed by defendant as a traveling salesman under a contract by which he received a commission of eight per cent on all goods sold by him and delivered by the defendant. The plaintiff's brother Harold Quint was also employed by defendant under the same character of contract. In January, 1918, after the plaintiff had returned from the road where he had been selling defendant's goods during the fall season of 1917 and after his brother Harold Quint had left the employ of the defendant and while the plaintiff was in the office of the defendant company, its president Mr. Loth handed him a statement of his account dated October 31, 1917, and which covered plaintiff's commissions earned during the fall of 1917. This account was in the ordinary form showing credits and debits, and it appeared therefrom that there were commissions due the plaintiff amounting to the sum of $3308.63 from which the plaintiff had drawn $1888.81, leaving a balance due of $1419.82. According to plaintiff's testimony Mr. Loth at the same time that he gave him a statement of his account also handed him a statement of his brother's account which showed that his brother was overdrawn to the extent of $590, which account plaintiff testifies he sent to his brother who was in the Army, and that no conversation took place at that time between Mr. Loth and the plaintiff with reference to the payment of his brother's account. Mr. Loth testified that on this

occasion he handed the plaintiff his statement and also a statement of his brother's account and said to him: "Here is a statement of your account and also Harold's account; the amount that Harold has overdrawn I will deduct from the amount that is owing to you and I will give you a check for the balance." Mr. Loth testified that the plaintiff then said: "I am going away and I don't want any money; leave it until I get back."

It was uncontradicted that the plaintiff thereafter continued to work for tht defendant and made another trip on the road in the spring of 1918 and that defendant mailed to him a check for $828.94, which was the amount of the plaintiff's account less the overdraft of his brother, which check was returned to the defendant for the reason that it was insufficient, as the plaintiff claimed that he had nothing to do with his brother's account. Nothing more was done about the matter until plaintiff again returned to the defendant's office in April, 1918, when there was another conversation between the plaintiff and the president of the company. According to plaintiff's version of this conversation Mr. Loth said to him that he had charged the overdraft of his brother Harold to his account and that plaintiff told him he had nothing to do with his brother's account, that he refused to pay the overdraft, and that Mr. Loth then said to him that there were some personal items on Harold's account amounting to $215.35 which the defendant company had paid out for Harold on account of clothes, doctor bills, etc, and which had nothing to do with the business of the defendant, and which Mr. Loth said the company should not stand. Plaintiff testified that in reply to that proposition he said: "Well I will tell you, I wont be small about this matter, I will stand those personal items providing you pay six per cent on the money that has been due me since October 31, 1917." Plaintiff testified that Mr. Loth didn't say anything, but that he went into the office and returned with two checks, one for $828.94, and being the same check that had been previously sent to plaintiff

and returned by him, and the second check for $375.53, making a total of $1204.47; that defendant also had a statement of account and on which he had entered the item $215.35, being the personal items on the account of Harold Quint and which showed a balance due plaintiff of $1204,47. Plaintiff testified that these checks were given to him; that after looking at the check and the account he found that it did not include the interest on his total account; that he then went into the office of Mr. Loth and said: "Mr. Loth this check does not include interest;" and he said, "Well it is only a small matter I will think it over and put it on your next statement; and I said, "No I wouldn't care to have it that way; I want it on this statement and settle this now," and he refused to do it; so I laid both the checks on his desk and walked out of the office.

Mr. Loth testified with reference to this conversation in April, 1918, that he told the plaintiff that Mr. Hoffman, the uncle of plaintiff and who was connected with the business, had told him that the firm would not lose anything on account of Harold Quint as a salesman; that plaintiff Leo Quint would make good Harold's losses, and that he said to plaintiff that as to the personal items that had been paid for Harold in the way of doctor bills, tailor bills, insurance, etc., that he wouldn't expect the firm to stand for these items, and that plaintiff then said: "What does that amount to?" and that the witness then gave him an itemized account amounting to $215.35, and that plaintiff then said: "I will pay this portion of it and I will not pay any more." The witness then testified that he drew an additional check for $375.53 and handed this check together with the check for $828.94, making a total of $1204.47 and also a statement of the account to plaintiff, which he accepted and went out of the inner office of the company; that shortly thereafter the plaintiff came into his (Mr. Loth's) office and stated that he wanted interest on his money and that the witness told him it was a very small amount and that he would consider it, but

that he finally turned it down and plaintiff brought back the checks and laid them on his desk and said he would not pay any of his brother's accounts.

Plaintiff asserts that the foregoing evidence shows conclusively that an account was stated between the parties by the first conversation referred to in January, 1918. Defendant denies this and contends that the evidence conclusively shows that an account was stated by the parties by the second conversation and agreement made in April, 1918, followed by a payment thereof. We do not think the position of either party sound in that the evidence did not conclusively establish a stated account between these parties on either occasion.

A stated account is a new contract and involves a meeting of the minds of the parties. One of its essential elements is a promise either express or implied to pay the balance struck and agreed upon as being correct. It has been defined thus: "An agreement, between parties who have had previous transactions of a monetary character, that all of the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied for the payment of such balance." [1 Am. & Eng. Ency. Law (2 Ed.), p. 437.]

In Abbott's Trial Evidence (2 Ed.), page 568, it is stated: "If defendant's express assent to the account is proved, he may prove in his own favor all that was said by him in the same conversation that in any way qualifies or explains the statement already in evidence, or modifies the use that plaintiff might otherwise make of it. . . . If the express promise or assent is not shown by direct evidence, the account is not conclusive, but only shifts the burthen of proof. The inference of assent may be repelled not only by direct evidence of objection made before the account was rendered, or even after acting on it, but by any circumstances tending to a contrary conclusion."

In the case of Stewart v. Railroad, 157 Mo. App. 225, 137 S. W. 46, this court held: "In an action on an ac-

count stated, evidence that, on plaintiff exhibiting the account to defendant, the latter, while admitting the correctness of the items, claiming that, under a certain contract between plaintiff and defendant, plaintiff had insured defendant against any loss for any accident that might occur in doing the work out of which the account arose, and that a workman had received an injury in doing such work and had brought suit against defendant, and that defendant refused to pay the balance claimed by defendant as due, unless plaintiff would take care of such workman's claim, was insufficient to establish an account stated, there being no promise to pay, direct or implied.'' It was also said in this case that a promise to pay cannot be implied, in the face of a direct and positive refusal to pay and a denial on the part of the debtor that he owes the balance claimed to be due, as shown in the account exhibited to him.

In Rutledge et al. v. Moore, 9 Mo. 537, an action upon an account stated, it is ruled that the acknowledgment of the debt must be absolute and not qualified and not contingent or in the alternative.

In Packing Company v. Tallant, 132 Fed. 271, likewise an action upon an account stated, it is said: ''The fact that there was contention on Tallant's part, however groundless, that the sale was to the company, or for its benefit, and that the assumption of the account was that of the company, negatives the implication of such a promise by him. Accordingly, it has been held that when one to whom an account is rendered admits the correctness of the items, but denies his liability, insisting that some other person is justly chargeable, and ought to pay, the account does not become an account stated.'' [1 Am. & Eng. Ency. of Law, (2 Ed.), 446; Ryan v. Gross, 48 Ala. 370.]

In Work v. Beach, 53 Hun. (N. Y. Sup.) 7, it is held that where an account is stated and as a part of the transaction an express promise is given to pay upon a condition, any implied promise which would arise from such statement of account is excluded by reason of the

express contract. And further that the fact, that the balance was admitted to be correct by the defendant did not deprive him of the benefit of the condition with which that admission was coupled, that he would "pay the amount due when he could do so," and that it rested upon the plaintiffs to show that he was in a condition to pay the balance. In this case, l. c. 10, the court says:

"It is true that this transaction made this an account stated when the accounts were approved by the defendant as they were, and that in the absence of any promise to pay the law would imply a promise. But where an account is stated and, as part of the transaction, an express promise is given to pay upon a condition, that excludes the implied promise, because an express contract to do a thing excludes the idea of there being an implied contract. For example, when a man purchases goods and nothing is said about prices or time of payment, the law implies a contract to pay the value of the goods upon delivery. If, however, the purchaser makes an express promise to pay in thirty days after delivery, what under such circumstances becomes of the implied promise? It is clear that it does not arise. So in the case at bar, if there had been a settlement of these accounts, and simply an account stated had between these parties, an implied promise to pay would naturally have arisen. But in connection with the settlement is an express promise upon the part of the defendant to pay when he is able. That is the condition upon which he consents to the accounts and to the sale of the securities, and upon which he withdraws his defense to the joint account. Now, after the plaintiffs have accepted the withdrawal of the defense and the sale of the securities, and have accepted the assumption of liability by the defendant, it seems to be difficult to see how they can escape the condition upon which that liability was incurred. In other words, they propose to have the benefit arising from the settlement relieved from the burden which was specifically attached to it. The mere fact that the account was duly admitted to be correct by

the defendant himself, does not deprive him of the condition with which that admission was coupled.''

In Cape Girardeau, etc., Railroad v. Kimmel, 58 Mo. 83, the Supreme Court says that in an action upon an account stated ''the first essential is that the balance be acknowledged by the party to be charged.'' And that the assent or agreement to the balance ''is the very bottom upon which the right of recovery rests.'' [See, also, Risk v. Dale, (Kansas City Court of Appeals) 188 Mo. App. 726, 176 S. W. 529.]

Bearing in mind this essential element of an account stated, namely, an express or implied promise to pay the balance struck, what is the situation in the present case as to the account being stated in January, 1918? From plaintiff's version of the conversation with Mr. Loth at the time, there was unquestionably an account stated in that Mr. Loth the debtor handed to plaintiff a statement of his account which showed mutual debits and credits with a balance due plaintiff, and said nothing about plaintiff paying his brother's overdraft. Plaintiff does not contend there was an express promise to pay such balance at the time, but such would be unnecessary in the absence of anything to the contrary for the law would imply a promise to pay.

However when it comes to defendant's version of this conversation in January, 1918, Mr. Loth says with reference to the question of paying the balance that he would deduct the amount of the plaintiff's brother's overdraft and pay to plaintiff the balance. This negatives the idea of an express promise to pay the full balance and shows that the minds of the parties did not meet upon the question as to whether the defendant was to pay such balance. Plaintiff's counsel assert Mr. Loth had no right to ask plaintiff to pay his brother's account that there was no obligation upon plaintiff to do so. This is doubtless true, still the fact that Mr. Loth testified that he attached this condition to his obligation to pay, whether the condition be warranted or unwarranted,

shows that at the time he dissented from paying the full amount and did not at that time agree to do so. Consequently the question in this case whether or not there was an account stated between the parties embodying all of the essential elements of such contract was a disputed question of fact and should have been left to the jury. It is only where the evidence is undisputed that the court would be warranted in instructing the jury to return a verdict for the plaintiff in a case of this character. It follows that the court was not justified in giving the peremptory instruction to find for the plaintiff.

Nor do we think the evidence conclusively shows that there was an account stated between the parties in April, 1918. It is clear from plaintiff's testimony that at that time he only agreed to pay. a part of his brother's account, being the personal items referred to, on the express condition that the defendant would allow him interest on his account. This the defendant refused to do, and when the account which took credit for the amount of plaintiff's brother's personal items to the extent of $215.35 was presented to the plaintiff together with the two checks in payment thereof, the plaintiff as soon as he examined same and found that the account did not give him credit for the interest on his account immediately returned the account together with the checks to the president of defendant company. It was practically one transaction, as the plaintiff took the checks, retired from the office of the president of the company and immediately came back after discovering that the account did not give him credit for interest and refused to accept the checks. According to this evidence the minds of the parties did not meet, as the agreement lacked plaintiff's assent in that he did not agree to the account as stated and handed to him, as it did not give him credit for the interest on his account from October 31, 1917. It follows that the judgment should be reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Allen, P. J.* and *Daues, J.,* concur; *Becker, J.,* absent.