F. G. BARTON COTTON COMPANY, Appellant, v. B. N. VARDELL, Respondent.*

In the Springfield Court of Appeals, August 13, 1925.

1. **ACCOUNT STATED: Defined: Circumstances Held Not to Constitute Account Stated.** Where principal shipped cotton to a factor on which he was advanced money, and later gave the factor a note to help him get credit, but with no intention of making a settlement, the execution and delivery of the note did not constitute an account stated; "account stated" being an agreement between parties, who have had previous transactions of a monetary character, that all the items of the account representing such transactions and the balance struck are correct, together with a promise, express or implied, for the payment of such balance, each party understanding the transaction as a final adjustment of the respective demands between them.

Barton Cotton Co. v. Vardell.

2. ———: Circumstances Held Not to Constitute Account Stated, on Theory of Demand Made and no Reply. Letters of cotton factor, to which there was no reply, insisting on customer margining his account, but making no definite demand, did not constitute an "account stated" under rule that silence to a definite demand will be construed as consent to its correctness.

3. **FACTORS:** Factor and Principal: Duties of Factor. A factor does not guarantee that he will not commit an error, but where he receives a compensation for his services it is his duty to exercise reasonable skill and diligence to discharge the obligation that he owes his principal, and also to obey the instructions of the principal, and he is liable to the principal for damages resulting from his negligence, lack of skill, or disobedience.

4. ———: ———: Request Properly Refused. On trial of counterclaim by principal against factor, evidence *held* sufficient to warrant jury finding that principal directed factor to sell and factor refused; hence peremptory request to find for factor on counterclaim was properly refused.

5. **APPELLATE PRACTICE:** No Ground of Complaint Where Question Not Answered. On counterclaim against cotton factor for failure to sell cotton when ordered, testimony as to other cotton raised by witness *held* to give no substantial ground for complaint, where questions objected to related to price received and were not answered.

6. **FACTORS:** Trial: Instruction Held Justified by Evidence. On counterclaim against factor, an instruction that execution of note by principal was not a final settlement if jury found that it was given as an accommodation and with no intention of adjusting claims which defendant might have against plaintiff "for the negligent sale, if any," *held* properly given over objection that it submitted facts on which there was no evidence, and assumed that there was a negligent sale.

7. **TRIAL:** Instruction Held Proper. An instruction that jury should give principal damages if it found that he ordered factor to sell cotton consigned to him and factor refused, *held* proper over objection that it did not give factor a reasonable time to sell after receiving orders, there being no question of a reasonable time involved.

*Headnotes 1. Accounts and Accountings, 1 C. J., Sections 249, 259; 2. Accounts and Accountings, 1 C. J., Section 278; 3. Factors, 25 C. J., Sections 33, 36; 4. Factors, 25 C. J., Section 124; 5. Appeal and Error, 4 C. J., Section 2949; 6. Factors, 25 C. J., Section 124; 7. Trial, 38 Cyc., p. 1634.

Appeal from the Circuit Court of Butler County.—*Hon.
Almon Ing,* Judge.

AFFIRMED.

*Hugh B. Pankey* and *Hal H. McHaney,* both of Kennett, for appellant.

(1) The court erred in not sustaining appellant's motion to strike out respondent's counterclaim. 1 Under the pleadings it was admitted that the promissory note sued on was an unconditional written promise to pay a definite amount at a stated time in settlement of a past pecuniary obligation and same amounted in law to an account stated. Powell v. Pacific R. R. Co., 65 Mo. 658, 661; Locke v. Woodman et al., 216 S. W. 1006, 1008; Locke v. Woodman et al., 208 Mo. 255, 225 S. W. 352; Kansas City C. P. View Co. v. Kansas City Bridge Co., 233 S. W. 947; Risinger v. Begley, 190 S. W. 418; Quint v. Loth-Hoffman, 233 S. W. 92, 207 Mo. App. 391; Adam Roth Co. v. Hotel, etc., Co., 183 Mo. App. 429, 166 S. W. 1125; 2. The mere offering to give a note in settlement of a claim is sufficient evidence to establish an account stated. Borkowski v. Janicke, 170 Mo. App. 610, 157 S. W. 125, 126. 3. The theory of accounts stated applies be tween principal and factors. Dameron v. Harris, 281 Mo. 247, 219 S. W. 954, l. c. 957; McCord v. Manson, 17 Ill. App. 118. 4. It is not inconsistent with an account stated that it be coupled with a condition such as the debtor could pay when able. Quint v. Loth-Hoffman Co., 233 S. W. 92; Work v. Buch, 6 N. Y. Supp. 27. 5. (a) After an account is stated between creditor and debtor and the debtor does not except to same within a reasonable time such is evidence of debtor's assent to the stated account; the debtor in this case made no objection from December 20, 1920, to July 21, 1921, the date of his filing his answer in this cause. Dameron v. Harris, 281 Mo. 247, 219 S. W. 954; Koegel v. Givens, 79 Mo. 77; Dowell v. Railroad, .65

Mo. 658; McKensie v. Hall, 210 Mo. App. 1, 239 S. W. 154, 157; Bloss v. Aurora Milling Co., 207 Mo. App. 402, 229 S. W. 833, 835.   (b) A delay of two weeks on the part of debtor to object, was held to show an acceptance of an account stated.   Mulford v. Caesar, 53 Mo. App. 263, 269;   6. An account stated cannot be reopened except for accident, fraud or mistake, and none is pleaded or proved here. McCormick v. Interstate Consolidated Rapid Transit Co., 154 Mo. 191; McKensie v. Hall, 210 Mo. App. 1, 239 S. W. 154; Harris v. Janish, 226 S. W. 610; Dameron v. Harris, 281 Mo. 247, 219 S. W. 954; Barr v. Lake, 147 Mo. App. 252, 126 S. W. 755, 758.   7. Evidence of fraud, accident or mistake is inadmissible unless such matters are pleaded.   Dameron v. Harris, 210 Mo. App. 1, 219 S. W. 954.   (2) Because the court erred in admitting incompetent testimony.   1. Testimony of B. N. Vardell, Floyd Vardell, and Cleveland Goff relative to the values and sales price of cotton raised in certain neighborhoods without regard to their lack of knowledge of classification and grades of cotton.   Bailey Ball Pumphrey v. Branham, 236 S. W. 379; Bailey Ball Pumphrey v. German, 213 Mo. App. 11, 247 S. W. 483.   (2) Testimony of an isolated sale of cotton by witness Goff without any proof that the cotton then sold was of the same class or grade as respondent's cotton.   Bailey Ball Pumphrey v. German, 213 Mo. App. 11, 247 S. W. 483.   (3)   The court erred in admitting any evidence relative to any transaction prior to the execution of the note, i. e. December 8, 1920, as the same was an account stated.   Barr v. Lake, 281 Mo. 247, 126 S. W. l. c. 758; all cases cited under 1.   (4)   Because the court erred in refusing to give plaintiff's instruction numbered one which requested a directed verdict on the theory that under the evidence and under the pleadings the note sued on was an account stated.   See all case cited   under 1. Alexander v. Scott, 150 Mo. App. 213, 129 S. W. 991; Kansas City C. P. Co. v. Kansas City Bridge Co., 233 S. W. 946.   (5)   Because the court erred in giving re-

spondent's instruction numbered one. 1. Because said instruction submitted facts not proven, i. e. question whether there was any consideration for the note, question whether note was merely given for accommodation and the question of intention. Locke v. Woodman, 216 S. W. 1008; Weigman v. Weigman, 261 S. W. 758; Fletcher v. K. C. Ry. Co., 221 S. W. 1070; Gunn v. Hemphill Lumber Co., 218 S. W. 978; (2) Because the instruction assumed a fact not proven, i. e. fact of a negligent sale, said instruction using the words, "which the defendant might have against the plaintiff for the negligent sale." Gunn v. Hemphill Lumber Co., 218 S. W. 978; Simmons v. Dunham, 203 S. W. 652; Stid v. R. R. 236 Mo. 382, 139 S. W. 172; McAtee v. Valandingham, 75 Mo. App. 45. (6) Because the court erred in giving respondent's instruction numbered two. 1. Because said instruction submitted facts not proven, i. e. a "specific instruction" of appellant to sell said cotton, a refusal of appellant to sell, and the date of respondent's alleged demand. Weigman v. Weigman, 261 S. W. 758; Fletcher v. K. C. Ry. Co., 221 S. W. 1070; Gunn v. Hemphill Lumber Co., 218 S. W. 978. 2. Because said instruction submitted the question of negligence and carelessness on part of appellant when there was no proof of same. Gunn v. Hemphill Lumber Co., 218 S. W. 978; Simmons v. Dunham, 203 S. W. 652; Stid v. Railroad, 236 Mo. 382, 139 S. W. 172; McAtee v. Valandingham, 75 Mo. App. 45. 3. Because said instruction placed an improper duty upon appellant, i. e., that it attempts to establish the negligence upon failure to sell upon the demand of respondent when in any event a factor would be allowed a reasonable time to sell after date of demand. Bailey Ball Pumphrey v. Branham, 236 S. W. 379.

*F. M. Kinder,* of Poplar Bluff, and *Smith & Zimmerman,* of Kennett, for respondent.

(1) The court did not err in overruling appellant's motion to strike out respondent's counterclaim. (a) The

note was given by respondent without any idea or intention of settling the cotton account between the parties, but, on the contrary, there was a positive agreement that the giving of the note would have nothing to do with the settlement of the cotton account later on. Appellant made no demand for payment, presented no statement of the account to respondent, and there never was any meeting of minds on the proposition of the note closing or settling the cotton account. Mo. P. Railway Co. v. Combs and Brother Com. Co., 71 Mo. App. 299; Fesse v. Blanke, 127 Mo. App. 431-2; Quint v. Loth-Hoffman Clo. Co., 233 S. W. 92, 207 Mo. App. 391; Kansas City Photo V. Co. v. K. C. Bridge Co., 233 S. W. 947; Niehaus v. Gillanders, 184 S. W. 950; Damerson v. Harris, 219 S. W. 955; McCormick v. Transit Co., 154 Mo. 191; 1 Cyc. page 382-q; 1 C. J., page 683, secs. 263-4; 1 C. J., page 708, — S. W. 333. (b) Respondent's answer pleads facts which, if found to be true, would permit the filing of a counterclaim for damages growing out of the cotton transactions between the parties, since it was alleged, and proved, that the giving of the note was not to affect the cotton account, or transactions had thereunder. McCormick v. Transit Co., 154 Mo. 191; Dameron v. Harris, 219 S. W. 955; Niehaus v. Gillanders, 184 S. W. 950. (c) All the facts show that the parties never intended for the note to close the cotton account, and that the cotton account continued after, as before, the giving of the note. Authorities under 1 (a). (d) If it be contended that the fact that the note was executed lends credence to appellant's contention that the note was given in full settlement of the cotton account, or even makes a prima-facie case of an account stated, we contend that the allegations in respondent's answer raise the following issues: (1) The general issue of whether or not there was in fact an account stated. (2) Mistake in the purpose and use for which the note was asked for and procured. (3) The procurement of the note under such circumstances as to amount to a fraud upon re-

spondent. (4) That certain matters, especially matters growing out of the cotton account, and the basis for respondent's counterclaim, were omitted, by express agreement, from the matter of the execution of the note. Niehaus v. Gillanders, 184 S. W. 950; Dameron v. Harris, 219 S. W. 955; Barr v. Lake 126 S. W. 755; White v. Storm, 236 Mo. 492. (2) The court did not err in the admission of the testimony given on the part of the witnesses, B. N. Vardell, Floyd Vardell and Cleveland Goff. (a) B. N. Vardell. The price of cotton was confined to the Memphis market and was proper. (b) Floyd Vardell. Bailey Ball Humphrey v. German, 247 S. W. 483. The testimony complained of was confined to his knowledge of cotton and the condition of the cotton shipped, when picked. Furthermore, the testimony was elicited, in the main, by appellant and it cannot now complain. (c) The testimony of this witness was offered to show what similar cotton brought on the Memphis market, and was competent to prove the market value of the cotton at Memphis, where respondent's cotton was shipped. Bailey Ball Humphrey v. German, 247 S. W. 483. (3) The admission of evidence relative to transactions prior to the execution of the note was not error, because respondent's answer put in issue the question of whether or not the note was given for and in settlement of the cotton account and was, in fact, an account stated. Niehaus v. Gillander, 184 S. W. 950; Cases cited under 1 (a). (4) Plaintiff's instruction number one was properly refused because respondent had the right to try the issues raised by his counterclaim. See Authorities under 1 (a). (5) (1) Respondent's instruction No. 1 was proper, because: (a) There was a conflict of evidence as to what was said and done at the time the note was executed,—a question of fact for the jury. (b) There was a conflict of evidence as to whether or not instructions were given to appellant by respondent with each shipment—a question of fact for the jury. (c) There was a conflict of evidence as to whether or not

Floyd Vardell went to Memphis to get appellant to sell the cotton and its refusal,—a question of fact for the jury. (2) Said instruction No. 1 was proper under the facts proved. The testimony of Floyd Vardell is to the effect that appellant refused to sell cotton for the price obtaining in Memphis on that day, and later admitted they made a mistake. (6) Instruction No. 2 for respondent was proper under the pleadings and the proof.

BRADLEY, J.—This cause, based on a promissory note, was filed in Dunklin county, but the venue was changed to Butler county, where upon trial before the court and a jury plaintiff obtained judgment on the note for $1015.16, the amount sued for, and defendant on a counterclaim obtained judgment against plaintiff for $1100. Plaintiff's motion for a new trial on the counterclaim was overruled and it appealed.

Plaintiff in an amended petition alleged that it is a corporation organized under the laws of the State of Tennessee, being incorporated as a cotton factor and commission merchant with its principal office in Memphis, Tennessee, and authorized to do business in the State of Missouri; that defendant by his promissory note dated December 8, 1920, promised to pay to plaintiff or order $1187.61 on February 1, 1921, with interest at six per cent from date. Then follows allegations of credits totaling $348.64 and the prayer for judgment.

Defendant denied liability on the note, and filed a counterclaim seeking affirmative relief. In the answer defendant admits that plaintiff is a Tennessee corporation engaged in the business of a cotton factor and commission merchant in that State and in the State of Missouri; and alleges that at the special instance and request of plaintiff he shipped to plaintiff, between January 3rd and February 10, 1920, twenty bales of cotton to be stored and sold by plaintiff to defendant's use and benefits; that according to the conditions and terms of said shipment, defendant drew on said cotton the sum of

$2000 to be paid from the proceeds of the sale of said cotton by plaintiff, according to the contract of shipment; that thereafter, between the — day of June, 1920, and December 8, 1920, plaintiff sold twelve bales of said cotton; that on the 8th of December, 1920, plaintiff, through its agent and representative came to defendant and represented to defendant that plaintiff was in need of collateral to place with banks which it owed and that it could not use accounts, such as it had with defendant and asked defendant to place said account in the form of a note in order that it could use the same; that for the purpose of accommodating plaintiff, and for no other purpose, he executed the note sued on and turned same over to plaintiff to be used as stated; that there was no consideration for said note, and that it was mutually agreed between the parties that the note would stand in the same relation as the account had stood and that the account was not closed and would not be closed until the cotton was all sold and disposed of.

In the counterclaim it is alleged that plaintiff was engaged in the business of a cotton factor and commission merchant at Memphis solicited customers in various states to ship cotton to it to be stored in its warehouses in Memphis, and to be sold by plaintiff when directed by shippers; that it is customary with such cotton factors and commission merchants to pay freight, drayage and insurance on all cotton shipped and to charge the customer a fee for storage and a commission for selling, all to be charged to the account of the customer and paid when said cotton is sold; that between January 3rd and February 10, 1920, defendant shipped to plaintiff for sale twenty bales of cotton, which would average 500 pounds per bale, with instructions to sell at once upon the open market for the best price obtainable; that on said dates there was a strong demand on the Memphis market for the class and grade of cotton shipped by defendant and that such cotton was selling for thirty-five to forty cents per pound; that plaintiff failed and refused to sell

said cotton at the price obtaining when received and ignored and failed. to follow the instructions of defendant to sell said cotton upon delivery.

Defendant further avers that when he ascertained that plaintiff had not sold said cotton as he had ordered and directed he sent, in March, 1920, his agent to Memphis to find out why said cotton had not been sold; that plaintiff represented to the agent of defendant that it would not place said cotton on the market at the price obtaining at that time, which was thirty-two cents per pound; that at that time defendant's agent again instructed and ordered plaintiff to sell said cotton, but that plaintiff ignored said orders and instructions and failed and refused to place said cotton on the market or sell any part thereof until June 17, 1920; that after the — day of March, 1920, cotton began to decline and continued to decline until there was no market for cotton, and until cotton of the class and grade shipped by defendant would not bring the carrying charges; that from June 17, 1920, until March 8, 1921, plaintiff sold fourteen bales of said cotton on a declining market at a price ranging from seven to twenty-five cents per pound and at an average of sixteen cents per pound, causing defendant to lose on said cotton. so sold from sixteen to twenty-five cents per pound, and causing defendant to lose in the other six bales thirty-two cents per pound; that if said cotton had been sold when directed by defendant the said fourteen bales would have brought sixteen cents per pound more than plaintiff received therefor, and that said six bales which plaintiff failed to sell would have brought thirty-two cents per pound; that because of the negligence, carelessness and wilfulness of plaintiff in failing and refusing to sell said cotton as ordered and directed, defendant was damaged in the sum of $1872; that plaintiff had said cotton in its control and that defendant could not sell the same under the terms and conditions of the shipping agreement between plaintiff and defendant.

After unsuccessfully moving to strike out the counterclaim plaintiff filed reply putting in issue the new matter pleaded in the answer and counterclaim.

Error is assigned (1) on the overruling of plaintiff's motion to strike the counterclaim; (2) on the refusal of plaintiff's request for a directed verdict in its favor on the counterclaim; (3) on the admission of evidence; and (4) on the instructions.

We shall consider the first two assignments together. The peremptory request at the close of the case we think covered the field. In this request plaintiff asked for a directed verdict in its favor both on the note and on the counterclaim. When this was refused plaintiff asked for a directed verdict on the note, and this was given. Plaintiff contends that its assignment based on the refusal of its peremptory request for a directed verdict on the counterclaim may be sustained upon two theories, viz.: (1) that the matters and things between plaintiff and defendant became, after execution and delivery of the note sued on, an account stated; (2) that there was no substantial evidence to support the counterclaim.

Did the matters and things between the plaintiff and defendant after the execution and delivery of the note become on account stated. Let us first look to the situation existing between the parties at the time the note was given on December 8, 1920. At that time it is undisputed that defendant owed plaintiff $2000 for money advanced on the twenty bales of cotton plus charges and commission earned up to that time, and from plaintiff's viewpoint it only owed defendant for the proceeds of the sale of twelve bales of cotton which had been sold up to that time. The period of time through which defendant claimed plaintiff might have sold the cotton had it acted with diligence and in obedience to his instructions had elapsed, hence the *status quo* on December 8, 1920, may be taken as the proper basis upon which to determine the account stated theory. Plaintiff contends that the execution and delivery of the note permanently closed the

door upon all matters that might have theretofore been the subject of controversy between itself and defendant. On the other hand defendant contends that so far as concerns his rights to stand on his counterclaim the situation is the same as if the note had not been given.

An account stated in an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise express or implied, for the payment of such balance. [1 C. J., sec. 249, p. 678; Bambrick et al. v. Simms, 102 Mo. 158, 14 S. W. 935; Risk v. Dale, 188 Mo. App. 726, 176, S. W. 529; Stewart v. Railroad, 157 Mo. App. 225, 137 S. W. 46.] But to constitute an account stated each party, must understand the transaction as a final adjustment of the respective demands between them. [1 C. J., sec. 259, p. 683; Mo. Pac. Ry. Co. v. Coombs & Brother Com. Co., 71 Mo. App. 299; Quint v. Loth-Hoffman Clothing Co., 207 Mo. App. 391, 233 S. W. 92.]

In support of the allegations in the answer as to why the note was given defendant testified to the effect that plaintiff's agent came to his house and insisted on getting a note so that a good showing could be made at the bank for credit, "and that it wouldn't have anything to do with our account or settlement hereafter." Defendant further testified that the agent of plaintiff who came to see him and secured the note did not have with him an itemized statement of his account with plaintiff, and did not tell defendant exactly how much it was; but said that "he wanted a note to make a good showing to his bank, but it had nothing to do with their settlement later on. . . . that he signed the note just to satisfy and as an accommodation to the man to help him out, thinking if his cotton was right he would have plenty to pay the debt; that he had several bales on hand; that at the time the note was signed there was nothing about the settlement mentioned as all the cotton was not sold." De-

fendant's son, Floyd Vardell, was present when plaintiff's representative, Drake, was at defendant's house on December 8, 1920, when the note was executed and delivered, and heard the conversation between Drake and defendant regarding the note, and testified to about the same effect as did the father as to why the note was given.

In view of this evidence and the law respecting an account stated there is no ground to support the theory that the execution and delivery of the note constituted an account stated between plaintiff and defendant. According to defendant it was expressly understood between him and Drake that the execution and delivery of the note would not affect a settlement thereafter.

Plaintiff's learned counsel contend that there was an account stated prior to the execution of the note. This contention is based on the theory that plaintiff made demand and that defendant by his silence and failure to reply to letters acquiesced in the correctness of the demand. There are cases supporting the principles relied upon. In Kansas City Commercial Photo View Co. v. Kansas City Bridge Co., 208 Mo. App. 255, 233 S. W. 947, the court used this language: "It is well settled that to support an action on an account stated plaintiff must show that there is a demand on one side that is acceded to on the other, and there must be a fixed and certain sum admitted to be due. There need not be an express admission, for if the party receiving the account keeps the same and makes no objection within a reasonable time, his silence will be construed into acquiescence in its justness, and he will be bound by it as if it were a stated account."

Plaintiff wrote defendant concerning his account on September 4th and 21st, and on October 1st, 18th and 29th, and on November 9th. These letters for the most part insisted on defendant margining his account, and

no definite demand was made.    We are clear that the rule of silence is not applicable here.

Is there any substantial evidence to support the counterclaim? We will first speak briefly to the law governing factor and principal before proceeding with and answer to the question presented.   A factor does not gurantee that he will not commit an error, but where the factor is to receive a compensation for his services it is his duty to exercise reasonable diligence and skill to discharge the obligation that he owes his principal, and he is liable for damages caused his principal resulting from his negligence, or lack of skill.   [25 C. J., sec. 33, p. 257; Benedict v. Inland Grain Co., 80 Mo. App. 449; Bernet v. Hockaday, 61 Mo. 627.]    Also as a general rule it is the duty of a factor to obey the instructions of the principal, and that he will be liable to loss to his principal resulting from his failure to obey instructions. [25 C. J., sec. 359; Sigerson v. Pomeroy, 13 Mo. 620; Switzer et al. v. Connett, 11 Mo. 88; Singer Mfg. Co. v. Hudson, 4 Mo. App. 145.]

Defendant in 1920 shipped cotton to plaintiff as follows: January 3rd, five bales; January 31st, four bales; February 7th, nine bales; February 10th, two bales. Floyd Varnell, defendant's agent testified that he personally supervised the shipping and ''that he wrote them to sell on arrival; that he wrote this letter about the first time any cotton was shipped; that he did not think he did this as he made each shipment just one time.''   This witness further testified that he went to Memphis in March, 1920, for his father, the defendant; ''that the reason for his going was because their cotton had not been sold and they needed some money; that he had reason to think the cotton company would sell their cotton, as that was what they put it there for and because other people were selling for a good price that he had written them to sell.    .   .   .    That he told Mr. Drake who he was and what he was in Memphis for, telling him he was there to see about their cotton; that Mr. Drake told him that

they had shipped the cotton to them and left it up to them to sell, and that was their business to sell the cotton, and they didn't want to put it on no such market—he called it a sick market———. That when he asked why their cotton had not been sold he was told they didn't want to put it on such a market; that he told Mr. Drake about their financial condition at that time and that they needed money and that Drake said: 'We will get by with that; if you have to have some money we might advance some more; *we are not going to put it on no such market.*' (Italics ours)——That he didn't want to borrow more money, just wanted the cotton sold; that he saw the grades of different cotton there as Mr. Drake took him through the cotton house where it was all marked, whose it was, showing all different classes of cotton; that he saw a sample of his cotton; that cotton was worth thirty-two or thirty-two and one-half on the Memphis market that day; that this was the market they would not put it on———. That the next time he saw Mr. Drake was when he came to his house looking for his father, and——that he asked Mr. Drake at this time why he didn't sell their cotton when he was down there and asked him to sell it and Mr. Drake replied: 'Mr. Vardell, I was like everybody else, we was fooled in the price of cotton; we had hoped it would go up.' ''

Plaintiff offered evidence tending to show that it received no directions from defendant regarding the sale of the cotton, and that it was in no manner responsible for the failure to sell defendant's cotton to advantage. But we cannot say that defendant offered no substantial evidence to support his contention that he directed the sale of his cotton at a time when, according to his case, it might have been sold for a good price and that plaintiff refused to put his cotton on the market. The jury had a right to draw the conclusion from the evidence offered by defendant that he did order plaintiff to sell his cotton when it might have been sold for as much as thirty-two cents per pound, and that plaintiff refused

to put the cotton on the market. We are clear that the peremptory request to find against defendant and in favor of plaintiff on the counterclaim was properly refused.

Complaint is made of the admission of certain evidence respecting the market for cotton. Plaintiff names three witnesses of whose evidence complaint is made. These are the defendant, and his agent, Floyd Vardell, and Cleveland Goff. Defendant, B. N. Vardell, was asked: "What were you offered for cotton of that character (meaning character of defendant's cotton shipped to plaintiff) in Dunklin County?" An objection to this question was sustained. This practically covered the field of objections so far as pertained to the evidence of defendant. As to the evidence of Floyd Vardell plaintiff made four objections, two of which were sustained, and the court failed to rule on the other two and plaintiff saved no exception to the Court's failure to rule. But in justice to the court and counsel we may say that perhaps the failure to rule and the failure to except were due to the apparent lack of substance in the objections. Concerning the evidence of the witness Goff the record shows as follows: "Witness testified that his name was Cleveland Goff; that he had been living in Dunklin county about twenty-four years; that he had raised cotton every year for twenty-three or twenty-four years; that he had raised a cotton crop in 1919; that the bales of cotton marked C. G. shipped by Mr. Vardell was cotton that he sold Mr. Vardell; that he lived about three-quarters of a mile northeast of Mr. Vardell's place; that he picked the cotton which he sold to Mr. Vardell; that he saw it after it was baled; that he was familiar with the kind of cotton Mr. Vardell shipped; that he shipped some cotton to Douglas Brothers at Memphis after he had sold the other cotton to Mr. Vardell.

"Q. The cotton you sold to Douglass Brothers, was it—how did it compare with the Vardell cotton? A. I had some just like it, and I had it baled a little better.

"Q. What did you get for that cotton?

"MR. PANKEY: We object to this kind of testimony, not limited as to time. The courts of this State have held quite recently that ordinary statements about grade or any material, that when standards are made those standards must prevail.

"COURT: He hasn't named any time.

"Witness produced a paper which he said was sent him from Douglass Brothers, dated March 31, 1920; that he shipped this cotton after he had sold the other cotton to Mr. Vardell.

"MR. ZIMMERMAN: I will ask that these papers be marked as defendant's exihibit.

"Witness testified that this cotton was picked like Mr. Varnell's about the same color, except in two bales; that it was picked the same time and out of the same field, and had been cultivated alike.

"Q. Then after you sold that on the 31st day of March you got thirty-four cents for that—(interrupted).

"MR. PANKEY: We object to that for the same reason given before.

"COURT: Overruled.

"To which ruling of the court, the plaintiff, by counsel, did then and there duly object and except at the time.

"Q. This says here 'received 2-13-1920. Did you ship these bales all at the same time? A. No I didn't. I shipped four one time and then followed it up with some more.

"Q. These on 2-13-20 were shipped at the same time? A. Yes sir.

"Witness testified that he shipped five bales, which all arrived at the same time; that for two of these bales he received $402.80 and for the other three bales $553.52; that this was sold for thirty-four cents in Memphis, as shown by the paper produced."

In this state of the record we do not think that there is any substantial ground for complaint based on the admission of evidence.

Defendant asked and the court gave two instructions of which complaint is made. These instructions are as follows: "The court instructs the jury that if you find and believe from the evidence in this cause that the note sued on herein was executed by defendant without any consideration therefor, and for the purpose of accommodating plaintiff, and without any intention of the parties adjusting thereby any claims or demands which defendant might have against plaintiff for the negligent sale, if any, then the execution of said note by defendant was not a final settlement of the differences between the parties as to such claims or demands, if any."

Instruction No. 2. "The court instructs the jury that if you find from the evidence that defendant shipped twenty bales of cotton to plaintiff to be placed on the market and sold for the best price obtainable therefor, and if you further find from the evidence that plaintiff, after receiving said instructions as aforesaid, if you find they were given, negligently and carelessly failed and refused to place said cotton on the market and sell the same for the market price obtainable therefor at the time, and if you find that soon after defendant demanded of plaintiff that it sell said cotton as aforesaid, if said demand was so made, that the price of cotton, such as defendant had to sell, began to decline and continued to decline until said cotton was placed on the market and sold, and if you further find that plaintiff has sold said cotton on declining market and for less than for the market price obtaining for such cotton at the time of demand for sale by defendant, if such demand is made, then you will find for the defendant on his counterclaim for the difference, if any, between what said cotton would have brought at the market price obtaining for such cotton on the date of said demand by defendant and what plaintiff sold said cotton for, less a reasonable amount for commissions and carrying charges."

Instruction No. 1 is challenged on the grounds (1) that it submitted facts upon which there was no evidence;

and (2) assumes a fact not proven. Plaintiff contends that there was no evidence that the note was without consideration, or that it was given to accommodate plaintiff and without intending it as a settlement of the matters then existing between plaintiff and defendant. We do not regard the reference to the consideration as of consequence, because plaintiff recovered on the note for its full amount. According to the evidence offered by defendant, to which we have heretofore made reference, the note was given to accommodate plaintiff and without intending it as a settlement between them. Plaintiff says that the instruction assumes that there was a "negligent sale." By reference to the instruction it will be seen that the clause containing the reference to a negligent sale is followed by the old reliable and oft used "if any."

Instruction No. 2 is challenged on the grounds (1) that it submitted facts upon which there was no evidence; (2) that it did not give a reasonable time to sell the cotton after receiving the instructions to sell. The facts alleged to have been submitted without the scope of the evidence pertain to the alleged instructions of defendant to sell and plaintiff's failure and refusal to sell. We have heretofore ruled this question in passing upon plaintiff's peremptory request for a directed verdict on the counterclaim. We do not think there is any question of reasonable time involved. According to defendant's case he directed plaintiff to sell, and plaintiff refused to place the cotton on the market.

There is nothing in the recent case of Fargason & Co. v. Coleman, 272 S. W. (Mo. App.) 1003, which runs counter to our conclusion here. In that case the cotton was consigned without any instructions, and plaintiff there was "clothed with the ordinary rights of factors to sell in the exercise of a sound discretion for his reimbursement, at such time and in such manner as the usage of trade and general duty required."

We find no error in this record. The judgment should be affirmed, and it is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.