J. T. FARAGASON COMPANY, APPELLANT, v. FRED PITTS, RESPONDENT.[*]

In the Springfield Court of Appeals. Opinion filed March 2, 1926.

**1.—Evidence—Establishing Negligence of Factor in Not Selling by Showing Other Sales—Factors—Negligence of Factor.** In admitting evidence of sales of cotton, for purpose of showing that factor was negligent in failing to sell certain other cotton, there should be substantial proof that

the cotton shown to have been sold was a similar grade and sold on the same market, and all conditions connected with the sale of the cotton sold, permitted to be shown in evidence, should be reasonably proven to be similar in every respect to the conditions confronting factor in attempting to sell such other cotton.

**2.—Same—Slips Showing Other Sales of Cotton, But Not Showing Quality, Held Inadmissible to Show Negligence in Failure to Sell Other Cotton—Factors—Negligence of Factor.** Cotton sales slips held inadmissible to show factor's negligence in failing to sell cotton in controversy, where the evidence failed to show a reasonable fair similarity in grade between the cotton covered by the sales slips offered in evidence and the cotton in controversy.

**3.—Factors—Consignor's Order to Sell—Evidence Held Admissible Showing Such Order as to Surplus Not Necessary to Reimburse Factor.** In cotton factor's action to recover balance due for advances to consignor, evidence that consignor notified factor to sell **held** admissible as to surplus not necessary for reimbursement of factor's advances.

**4.—Same—Advances to Consignor—Right of Factor to Sell—Usage of Trade, Etc.** In absence of instructions, factor who made advances to consignor has the right to sell according to his sound discretion for his reimbursement and at such time and in such manner as the usage of the trade and general duty required.

**5.—Same—Instruction Held Properly Refused.** In action by cotton factor to recover balance due for advances to consignor, with defense that factor was negligent in not selling cotton, instruction telling jury that consignor, if dissatisfied with manner in which factor handled his cotton, could have paid factor the charges against it, and disposed of it himself, and that if he failed to do so, jury could take such fact into consideration in determining whether he was satisfied, **held** properly refused, since consignor, while he unquestionably had such right, was not bound to exercise it, although dissatisfied with factor's conduct of his affairs.

**6.—Trial—Instruction Held Erroneous as Ignoring Interest of Factor.** Instruction that factor's advances to consignor should be credited with difference in market value at time consignor instructed factor to sell, and time when cotton was actually sold, **held** error, as ignoring factor's pecuniary interest in cotton by reason of advancements made to consignor.

---

*Corpus Juris-Cyc. References: Evidence, 22CJ, p. 761, n. 53, 54; p. 762, n. 56. Factors, 25CJ, p. 356, n. 90; p. 362, n. 85, 90; p. 407, n. 82; p. 408, n. 93. Trial, 38Cyc, p. 1632, n. 10.

Appeal from the Circuit Court of New Madrid County.—Hon. Henry C. Riley, Judge.

REVERSED AND REMANDED.

*Barham & Barham,* of Blytheville, Ark., and *Gallivan & Finch,* of New Madrid, for appellant.

*Ward, Reeves & Oliver,* of Caruthersville, for respondent.

BAILEY, J.—Plaintiff brought suit to recover an alleged balance of $1255.70 due it for money advanced defendant on certain con-

signments of cotton. Defendant, by his answer and counterclaim, charged plaintiff with failure to exercise due diligence in the sale of the cotton shipped to it as a cotton factor; that if plaintiff had sold said cotton within a reasonable time after it received same or if plaintiff had sold said cotton when defendant demanded that it do so, that defendant would have due him over and above the amount which he had drawn and all other expenses, the sum of $2,382.50, for which he asked judgment. The reply was a general denial. On trial to a jury the verdict was for plaintiff on its petition in the sum of $1,085.70 and for defendant on his counterclaim in the sum of $1470.90, and on the whole case in the sum of $385.20. Judgment was entered accordingly and plaintiff has appealed.

The evidence shows that plaintiff, during the year 1919, 1920 and 1921, was located at Memphis, Tenn. Defendant, during that period, was a cotton grower residing in the vicinity of Portageville, Missouri. On January 17, 1920, defendant shipped from Portageville to plaintiff, five bales of cotton; on January 31, 1920, he shipped plaintiff three bales of cotton, and on February 9, 1920, he shipped plaintiff two bales. All shipments were made on consignment and a sight draft for an advancement accompanied each shipment. Plaintiff paid these drafts, amounting in all to the sum of $1288.50. No order for immediate sale was given by defendant at the time the shipments were made or received. The cotton was not sold immediately. Plaintiff offered evidence of a custom in the cotton market at Memphis, whereby samples of all cotton received were placed on display according to grade upon their arrival in the warehouse and that this custom was followed as to plaintiff's cotton; that there was no market for low grade cotton during the years 1920 and 1921, and that the buyers were scarce; that the Memphis market was flooded with low grade cotton and some 280,000 bales of the 1919 crop were held over until 1921; that defendant's cotton was low grade; that it was unable to dispose of the cotton at the fair market price on account of the abnormal condition of the market; that it sold defendant's cotton as soon as possible and for the best price obtainable. None of defendant's cotton was sold until February, 1921, and the last in September, 1921, the prices ranging from 5 to 8 cents per pound. On the question of the condition of the Memphis market during 1920 and 1921, plaintiff was strongly supported by the testimony of some eight Memphis cotton buyers, each of whom had purchased some of defendant's cotton through plaintiff. The principal issues thus made relate to the kind and quality of defendant's cotton and the condition of the Memphis cotton market as to such cotton during the years 1920 and 1921. In regard to the quality and grade of his cotton, defendant offered the testimony of a number of Portageville cotton men. The man who ginned the cotton, said it was "average cotton" for

that time of year. (January, 1920). Other witnesses testified defendant's cotton "run anywhere from ordinary to low middling." It seems that "ordinary" is a very low grade cotton and "low middling." is of higher grade but not the best. The highest and best grade is called "strict middling." Defendant testified his cotton was "good, average, clean cotton." from which he had saved the seed.

On the issue of the condition of the Memphis market during the year 1920, defendant was permitted, over plaintiff's objection, to introduce in evidence the testimony of certain Portageville cotton men that they had been able to sell their cotton through other Memphis cotton factors at prices ranging from 30 cents per pound to 70 cents per pound. In this connection defendant introduced in evidence, over plaintiff's objection, a great number of sales slips showing sales of cotton on the Memphis market during the early part of 1920. This cotton was sold by the Farmers District Gin Company and the Delisle Supply Company, both of Portageville. There was nothing on the sale slips to indicate the grade of the cotton sold except possibly the price. Plaintiff strenuously objected to the introduction of this evidence on the ground that no showing was made that the cotton sold was of the same or similar quality, fiber and grade as that of defendant. S. E. Smith testified in regard to the Farmers District Gin Company's cotton sales, above referred to, as follows: "We sold, I suppose, two or three hundred bales. The paper you show me is an account of sales we made through Wilson-Ward Company in the spring of 1920. The cotton was sold on January 5, 1920. That was shipped on the 31st of December, 1919. I couldn't say I was acquainted with the Fred Pitts cotton ginned at Portageville by George Allen, but I knew about the grade of cotton that was being ginned at that time. I saw the cotton that was being ginned at that time by that gin. I know where Fred Pitts lived. I know the character or kind of cotton raised around Potageville in 1919, about the same as come from other parts of the country. In the early part of the season the cotton was a little better. Here's some that was in 1920, was received on the 3rd day of January, it was about the class, I suppose, as this; it goes about low middling."

As to the sale of the Delisle cotton, Guy Delisle testified that his company shipped a lot of cotton to Memphis to be sold that year. "I was not acquainted with the Pitts cotton. I didn't see it at all." He further stated he did not know the grade of cotton which his company sold January 7, 1920, at forty cents. "It was good cotton. It was ginned early. I suppose it would be about the same grade of cotton as other ginned there at the same time." We have carefully read the record in this case and find no other evidence tending to show a comparison between the Farmers District Gin Company and Delisle cotton, and that of defendant. There are some general state-

ments that defendant's cotton was about the average, but the evidence does not go far enough to show the cotton covered by the sales slip was raised under similar conditions, picked at or near the same time, or of like quality as that of defendant.

In the case of Bailey-Ball-Pumphrey Company v. German, 247 S. W. 484, this court held that evidence of sales of cotton of similar grade to that then in controversy, shipped to the cotton market at about the same time by other parties, was admissible for the purpose of showing that the plaintiff in that case was negligent in failing to sell defendant's cotton. We adhere to that rule for the reasons there stated, but believe that where such evidence is admitted, there should be substantial proof that the cotton shown to have been sold was of similar grade and sold on the same market. In other words, to afford a reasonable basis for comparison and to guide the jury in determining whether or not plaintiff, as factor, failed to exercise due and proper diligence in representing defendant in the sale of his cotton, all conditions connected with the sale of other cotton, permitted to be shown in evidence, should be reasonably proven to be similar in every respect to the conditions confronting plaintiff when attempting to sell defendant's cotton. [Fargason & Co. v. Coleman, 272 S. W. 1003.]

Such character of evidence is dangerous at best because it permits the jury to be governed, perhaps, by isolated cases and possibly fortunate sales. Prices paid in the usual course of business on the open market at the time in question would seem to be the true criterion for determinig the fair market value of an article. [Moffit v. Hereford, 132 Mo. 513, 34 S. W. 252.]

Many cotton growers of that vicinity were undoubtedly unable to dispose of their cotton in 1920 as evidenced by the 380,000 bales carried over on the Memphis market. We are of the opinion the evidence in this case fails to show a reasonably fair similarity in grade between the cotton covered by the sale slips offered in evidence and the cotton of defendant and the admission of that evidence under the circumstances, constitutes reversible error.

Plaintiff has assigned as error the admission of the testimony of defendant that in March, 1920, he notified plaintiff to sell his cotton immediately. The objection is made on the theory that as appellant had invested heavily in this cotton, defendant had no right to give such instruction, but the factor was free to use his best judgment. In the absence of instructions, the factor certainly has the right to sell according to his sound discretion for his reimbursement and at such time and in such manner "as the usage of the trade and general duty required." [Fargason & Co. v. Coleman, 272 S. W. 1003; Barton Cotton Co. v. Varden, 275 S. W. 62.]

It would seem, however, that as to any surplus which might be realized from the sale, the principal has the right to give orders notwithstanding the interest of the factor. [Howard et al. v. Smith, 56 Mo. l. c. 316.] In relation to the surplus at least the evidence was admissible.

Plaintiff offered instruction c, which declared to the jury that defendant had the right to pay plaintiff the charges against his cotton and dispose of it himself. If he were dissatisfied with the manner in which plaintiff handled his cotton, and that if defendant failed to do so, the jury could take that fact into consideration in determining whether defendant was satisfied. While defendant unquestionably had that right, he was not bound to exercise it although he may have been dissatisfied with plaintiff's conduct of his affairs. [Boatmen's Bank v. Vandiver (decided at this term by this court.)] The instruction was properly refused.

The court gave on behalf of defendant instruction No. 1, as follows:

"The court instructs the jury that if you believe and find from the evidence that at the time the defendant shipped the cotton in question to plaintiff, or at any time thereafter, the defendant instructed plaintiff, either orally or in writing, to immediately sell said cotton, then it became and was the duty of plaintiff as a cotton factor or commission merchant to exercise reasonable diligence to immediately sell said cotton at its fair market price; and if you believe and find from the evidence the plaintiff did not exercise such reasonable diligence to immediately sell said cotton after receiving such instructions from defendant; and if you further find that said cotton could have been sold immediately by plaintiff, by the exercise of such diligence; and if you further find that the price of cotton thereafter declined in price, and that by reason of the failure and neglect of the plaintiff, as aforesaid, plaintiff sold said cotton at a greatly reduced price, then if you so find the facts, the amount of the advances, interest and charges sued for by the plaintiff should be credited by the amount of the fair market price of said cotton as of the time when same should have been sold by plaintiff as herein instructed, and your verdict should be for the plaintiff on his cause of action for the difference in said amounts, unless the amount for which said cotton could have been so sold exceeds the amount of such advances, interest and charges, and in which event, if you so find the facts, your verdict should be in favor of the defendant on the plaintiff's cause of action and for the defendant on his counterclaim for the amount of such excess."

This instruction ignores the fact that plaintiff as factor had a pecuniary interest in the cotton of defendant by reason of the advancement made by it. Under such circumstances, the principal has

no right by ''subsequent orders given after advances have been made or liabilities incurred by the factor, to suspend or control this right of sale, except so far as respects the surplus of the consignment not necessary for the reimbursement of such advances or liabilities.'' [Howard v. Smith, supra; Benney v. Rhodes, 19 Mo. 147; Phillips v. Scott, 43 Mo. 86; 11 R. C. L. 767; Col. Nat'l. Bank v. White, 65 Mo. App. 677.]

We believe this instruction clearly erroneous in the respect indicated.

For the errors noted, the judgment should be reversed and remanded. It is so ordered.

*Cox P. J.,* and *Bradley, J.,* concur.